Docket No. 108799.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

PEKIN INSURANCE COMPANY *et al.* (Pekin Insurance Company, Appellant), v. JACK O. WILSON *et al.* (Jack O. Wilson, Appellee).

*Opinion filed May 20, 2010.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

In this insurance coverage dispute, we are asked to determine whether the duty to defend the insured may be triggered by allegations of self-defense in the insured's counterclaim filed in response to an underlying lawsuit alleging the insured's intentional acts, where the policy contains both an exclusion for intentional acts and a self-defense exception to that exclusion. For the reasons which follow, we hold that the duty to defend is triggered.

## BACKGROUND

This case has its origins in a lawsuit filed in Jefferson County circuit court by Terry Johnson against the appellee herein, Jack O. Wilson, alleging causes of action for assault, battery, and intentional

infliction of emotional distress stemming from an incident in October 2002 and one in January 2004. Wilson tendered the defense of the Johnson suit (or underlying lawsuit) to the appellant herein, Pekin Insurance Company (Pekin), which had issued a commercial general liability policy to Wilson for the period September 22, 2002, through September 23, 2003. Wilson also tendered the defense of the Johnson suit to Farmers Automobile Insurance Association (Farmers), which had issued a homeowner's policy to Wilson covering the period of November 3, 2003, through May 3, 2004. On April 25, 2005, Pekin and Farmers jointly filed a complaint for a declaratory judgment, each asking the court for a determination that it did not owe Wilson a duty to defend the underlying lawsuit.[1]

Johnson filed an amended complaint in the underlying lawsuit on August 31, 2005, adding a count alleging negligence against Wilson. In the amended complaint, Johnson alleged that on October 31, 2002, an incident occurred at D&J Tarp Service, where, Johnson alleged, he had been "assisting Debi Wilson at her place of business" when Wilson arrived and began screaming expletives at him and "brandished" a steel pipe. Johnson alleged that Wilson struck him with the pipe in the shoulder and lacerated Johnson's right hand with a knife. Johnson alleged that, in order to protect himself, he subdued Wilson and restrained him, as Wilson continued his attempt to physically harm Johnson. After Johnson released Wilson, Wilson continued to scream expletives and threatened to go home to get a gun to shoot Johnson and Debi Wilson. It was further alleged that more than one year later, in January 2004, Wilson approached Johnson at a Wal-Mart store and showed him "what appeared to be the handle of a pistol." Johnson alleged that Wilson said he could "end it right now."

In the negligence count, Johnson realleged all the factual assertions from the intentional tort counts (assault, battery, and intentional infliction of emotional distress). Johnson then alleged that Wilson had breached his duty of ordinary care by failing to "adequately use tools of his employment in a safe manner[,] causing

---

[1]Farmers secured a declaratory judgment that it owed no duty to defend and the appellate court agreed. Farmers is therefore not a party to this appeal.

physical harm," that Wilson had failed to "properly maintain tools and knives in a protective manner," and that he had failed to "use tools for their intended purpose[,] causing physical harm." Finally, Johnson alleged that Wilson's negligence was the proximate cause of his injuries.

Pekin's policy covered Wilson as the "insured," and it described his business as a "private warehouse." In the coverages section, Pekin agreed to cover bodily injury and property damage liability as follows:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result."

Pekin listed the following exclusion to its bodily injury coverage: " 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured" (the intentional-act exclusion). To the intentional-act exclusion, Pekin provided the following exception: "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" (the self-defense exception). In an endorsement to the policy, Pekin limited its coverage for bodily injury to occurrences "arising out of *** [t]he ownership, maintenance[,] or use of the premises shown in the Schedule and operations necessary or incidental to those premises."

On October 5, 2005, Pekin filed an amended complaint for a declaratory judgment, again seeking a finding that it did not owe Wilson a duty to defend him in the underlying lawsuit. The amended complaint for a declaratory judgment was in response to Johnson's amended complaint in the underlying lawsuit, in which he added the negligence count against Wilson. On October 11, 2005, Wilson filed an answer to the amended complaint in the underlying lawsuit. As a part of his answer, Wilson filed a counterclaim against Johnson, alleging that, during the incident at D&J Tarp Service, Johnson was the aggressor and Wilson was defending himself. The counterclaim alleged that Johnson was guilty of assault, battery, and intentional infliction of emotional distress. In addition to the allegations that Johnson had been the aggressor in the altercation at D&J Tarp Service, Wilson also alleged in each of the three counts:

"6. Because of the physical size difference of *** Wilson and *** Johnson, [Wilson] picked up a piece of thin wall conduit used in the tarp service and, without moving in any threatening manner but merely possessing the pipe as to defend himself from *** Johnson, renewed his demand that *** Johnson leave the premises.

7. Thereupon, Johnson, with knowledge and intent, without provocation and without authority to remain upon the premises, came forward, grabbed Wilson, took the pipe away from him, and smashed his head and face into the wall."

On March 3, 2006, Wilson filed an answer to the amended complaint for a declaratory judgment, denying that Pekin had no duty to defend him in the underlying lawsuit. Wilson contended that the allegations of the underlying lawsuit were covered by the Pekin policy, citing the amended complaint in the underlying lawsuit which alleged that "the occurrence took place during normal business hours at the premises where [Wilson's] business is located and to which the Pekin policy extends coverage." Wilson also filed a counterclaim against Pekin, alleging counts of breach of contract and vexatious and unreasonable delay in violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2006)), given that, *inter alia*, "the Pekin policy gives rise to a duty on the part of Pekin to defend Wilson against covered claims."

On September 18, 2006, Pekin filed a motion for judgment on the pleadings pursuant to section 2–615(e) of the Code of Civil Procedure (735 ILCS 5/2–615(e) (West 2006)). Pekin argued, *inter alia*, that the negligence count of Johnson's amended complaint did not bring the underlying lawsuit within the coverage of its policy because Johnson had merely couched allegations of intentional conduct by Wilson in negligence terms. Pekin thus asserted that it was entitled to a judgment on the pleadings because there were no factual issues and it was clear it did not owe Wilson a duty to defend him in the underlying lawsuit. It was similarly asserted that there was no coverage for the incident that Johnson alleged to have occurred at the Wal-Mart store.[2]

---

[2]While the alleged Wal-Mart incident occurred during the coverage period of only the Farmer's policy, if Pekin has a duty to defend as to at least one

On October 10, 2006, Wilson filed a response to the motion for a judgment on the pleadings, arguing, *inter alia*, that Pekin had taken a statement from him and was aware that he denied any intention to harm Johnson. Wilson argued that any harm that Johnson suffered "would have been by accident." He argued that the court should conclude that Johnson's allegations of negligence were sufficient to raise a duty to defend. Wilson further argued that Pekin was not entitled to a judgment on the pleadings so long as the possibility existed that the jury would find that his conduct was either negligent or that "no untoward conduct"occurred by Wilson toward Johnson, and that Pekin had denied coverage despite language in its policy stating: "we will pay the sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' to which this insurance applies."

On March 29, 2007, the trial court entered an order declaring that Pekin had no duty to defend Wilson in the underlying lawsuit because its policy did not cover the claims asserted in that lawsuit. On April 30, 2007, Wilson filed a motion to reconsider, arguing, in pertinent part, that the order was premature because the jury in the underlying lawsuit could determine Wilson's conduct "to have been negligent," or that "there was a duty to defend" Wilson. After hearing the parties' arguments, the court entered an order denying Wilson's motion to reconsider and dismissing his counterclaim in the declaratory judgment action. The underlying lawsuit and Wilson's counterclaim against Johnson in that lawsuit remain pending.

Wilson filed a timely notice of appeal. The appellate court first found that the facts as alleged in the underlying complaint were inconsistent with allegations of negligence. Thus, no genuine issue of material fact remained as to the count that Johnson labeled as negligence.[3] 391 Ill. App. 3d 505, 511. However, the remaining

count of the lawsuit, it has a duty to defend in all counts of that lawsuit. See *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194 (1976); *Bedoya v. Illinois Founders Insurance Co.*, 293 Ill. App. 3d 668, 674-75 (1997).

[3]As there is no argument by Wilson that any issue of genuine material fact remains as to Pekin's duty to defend the negligence count of the underlying lawsuit, we will not address the matter further.

counts for assault, battery, and intentional infliction of emotional distress each allege intentional conduct that Wilson should have expected or intended, thus bringing these allegations under the intentional-act exclusion. As to these counts, the appellate court reversed the judgment for Pekin, holding that, in addition to relying upon the allegations of Johnson's complaint in the underlying lawsuit to ascertain Pekin's duty to defend, the court could consider whether the allegations which Wilson raised in his counterclaim against Johnson triggered the self-defense exception in the policy. 391 Ill. App. 3d at 513. We granted Pekin's petition for leave to appeal. 210 Ill. 2d R. 315(a).

## ANALYSIS

Pekin argues that the appellate court erred in reversing the trial court's grant of judgment on the pleadings in Pekin's favor, because the determination of the duty to defend must be based solely upon the allegations of the underlying complaint. According to Pekin, despite the fact that its policy contains a self-defense exception to the coverage exclusion for intentional acts, the question of Pekin's duty to defend cannot, as the appellate court found, include consideration of the insured's own pleadings raising this exception. We review the grant of judgment on the pleadings *de novo*. *Gillen v. State Farm Mutual Insurance Co.*, 215 Ill. 2d 381, 385 (2005). Additionally, the construction of the provisions of an insurance policy is a question of law for which our review is *de novo*. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004); *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80 (1997).

A motion for judgment on the pleadings is, like a motion for summary judgment, limited to the pleadings. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 138 (1999). Judgment on the pleadings is properly granted if the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001); *Employers Insurance of Wausau*, 186 Ill. 2d at 138. "For purposes of resolving the motion, the court must consider as admitted all well-pleaded facts set forth in the pleadings of the nonmoving party, and the fair inferences drawn therefrom." *Employers Insurance of Wausau*, 186 Ill. 2d at 138. In a

declaratory judgment action such as that presented here, where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy. See *Koloms*, 177 Ill. 2d at 479; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Koloms*, 177 Ill. 2d at 479.

As this court further stated in *Koloms*:

"A court's primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. [Citation.] If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. [Citation.] Conversely, if the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. [Citation.] In addition, provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer. [Citation.] A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. [Citation.]" *Koloms*, 177 Ill. 2d at 479.

Furthermore, the insurer's duty to defend its insured is broader than its duty to indemnify. *Outboard Marine Corp.*, 154 Ill.2d at 125.

At oral argument, Pekin relied mainly on this court's decision in *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23 (1987), to support its contention that the appellate court erred in allowing consideration of Wilson's counterclaim in addition to the allegations contained in the underlying complaint. Pekin contends that *Zurich Insurance Co.*, 118 Ill. 2d at 52, stands for the rule that a trial court must look solely to the underlying complaint and the applicable policy provisions to determine whether there is a duty to defend. Our examination of *Zurich Insurance Co.* shows that such a limited interpretation was not intended.

In *Zurich Insurance Co.*, this court examined a declaratory

judgment action involving the construction of various comprehensive general liability insurance polices issued to defendant Raymark Industries, Inc. (Raymark). In 1978, Zurich Insurance Company (Zurich), one of Raymark's primary insurers, filed an action in the circuit court against Raymark and two of Raymark's other primary insurers, seeking a declaration of its obligations and the obligations of the other insurers to defend and indemnify Raymark in thousands of underlying lawsuits filed by individuals alleging personal injuries or wrongful death resulting from exposure to asbestos-containing products manufactured by Raymark. Of the several issues raised in this court, the one relevant to the case at bar was set forth as follows: "Do the terms of the policies issued to Raymark before September 26, 1967 *** require the primary insurers to defend new actions and to continue to defend actions pending against Raymark after the limits of liability under those policies have been exhausted by the payment of judgments or settlements?" *Zurich Insurance Co.*, 118 Ill. 2d at 31. This court concluded that the policy language limited the duty to defend to the amount of indemnity coverage afforded by the policy as well as to the type of coverage afforded. *Zurich Insurance Co.*, 118 Ill. 2d at 51.

Although the insurers had undertaken to pay defense costs and various supplemental expenses " 'in addition to the applicable limit of liability' " of their policies, this court found that, nevertheless, "we do not construe this provision, as Raymark does, to create an independent and continuing obligation to pay the cost of defending claims against Raymark *ad infinitum*." *Zurich Insurance Co.*, 118 Ill. 2d at 51. Rather, this provision was included so that defense costs and other enumerated expenses the insurer agreed to pay would not reduce the limits of liability available for payment of judgments or settlements. *Zurich Insurance Co.*, 118 Ill. 2d at 51-52.

This court further reasoned:

> "Raymark seeks to avoid this [court's] conclusion by arguing that the duty to defend is an independent undertaking of the insurer that exists in addition to the duty to indemnify. Raymark's argument is premised on this court's statement that 'an insurer's duty to defend and its duty to indemnify are separate and distinct and *** the former duty is broader than the latter.' (*Conway v. Country Casualty Insurance Co.*

-8-

(1982), 92 Ill. 2d 388, 394.) *The duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy. The duty to defend an action brought against the insured, on the other hand, is determined solely by reference to the allegations of the complaint.* If the complaint alleges facts which bring the claim within the potential indemnity coverage of the policy, the insurer is obligated to defend the action. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193-94.)" (Emphasis added.) *Zurich Insurance Co.*, 118 Ill. 2d at 52.

We believe that the highlighted passage is simply an explanation of the differences between the scope of the duty to indemnify and the duty to defend; the question before us, whether other pleadings in the underlying action may be considered in determining the duty to defend, was not before this court in *Zurich Insurance Co.* Further, the cases cited by this court in *Zurich Insurance Co.*, 118 Ill. 2d at 52, for the proposition that the "duty to defend an action brought against the insured *** is determined solely by reference to the allegations of the complaint," do not support Pekin's interpretation. Rather, in *Maryland Casualty Co.*, 64 Ill. 2d at 193, this court stated: "In determining whether the insurer owes a duty to the insured to defend an action brought against him, *it is the general rule* that the allegations of the complaint determine the duty." (Emphasis added.) *Thornton* merely paraphrased this statement from *Maryland Casualty Co.*, declaring: "*As a general rule*, the duty of an insured to defend an action brought against the insured is to be determined solely from the allegations of the complaint." (Emphasis added.) *Thornton v. Paul*, 74 Ill. 2d 132, 144 (1978), *overruled on other grounds*, *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000).

Thus, we disagree with Pekin that this court in *Zurich Insurance Co.* intended to limit the source of an insurer's duty to defend "solely" to the content of the underlying complaint in all cases. Additionally, we note that appellate court cases cited by *Pekin* which found that a third-party complaint may not be examined by a court in determining a duty to defend also qualified that holding. See *National Union Fire*

*Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc.*, 329 Ill. App. 3d 228, 238 (2002) (court declined to follow approach taken by other appellate court cases suggesting a trial court should look to a third-party complaint to determine the potential duty to defend, "absent some unusual or compelling circumstances, which are not present here"); accord *L.J. Dodd Construction, Inc. v. Federated Mutual Insurance Co.*, 365 Ill. App. 3d 260, 262 (2006).

In concluding that a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend, we find it useful, as did the appellate court herein, to examine two cases: *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017 (2008), and *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301 (1983). In *Holabird & Root*, Cogtella, the plaintiff in the underlying case, sued, *inter alios*, Holabird & Root (H&R) and DePaul University (DePaul), alleging that she suffered bodily injury due to her exposure to the fluorescent lighting selected and installed in a building on the DePaul campus. H&R tendered its defense of Cogtella's complaint to plaintiff American Economy Insurance Company (American Economy) because American Economy was the insurer of Metrick Electric Company (Metrick), the electrical subcontractor that H&R hired to install the lighting in the building and because H&R was a named additional insured on Metrick's insurance policy. American Economy denied coverage and filed a declaratory judgment action as to its duty to defend in the Cogtella litigation. The trial court, in considering cross-motions for summary judgment, held that American Economy had an obligation to defend H&R in the Cogtella litigation.

American Economy appealed, arguing that the trial court erred in finding that it had a duty to defend H&R because the complaint filed by Cogtella did not allege any negligence by Metrick and because the trial court improperly considered a third-party complaint filed by DePaul to find such a duty. The appellate court affirmed, concluding: "If we consider both the Cogtella complaint and DePaul's third-party complaint along with the relevant language of the American Economy policy, we find the facts raise the potential for coverage ***." *Holabird & Root*, 382 Ill. App. 3d at 1032. In reaching this holding, the *Holabird & Root* court initially noted that the duty to defend does

not require that the underlying complaint allege or use language affirmatively bringing the claims within the scope of the insurer's policy, because ' " '[t]he question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.' " [Citation.]' *Holabird & Root*, 382 Ill. App. 3d at 1022.

Based on general precedent governing insurance coverage, as well as its examination of "a long line of Illinois cases" involving summary judgment proceedings in declaratory judgment actions, the *Holabird & Root* court reasoned:

> "[C]onsideration of a third-party complaint in determining a duty to defend is in line with the general rule that a trial court may consider evidence beyond the underlying complaint if in doing so the trial court does not determine an issue critical to the underlying action [citation].[4] *The trial court should be able to consider all the relevant facts contained in the pleadings, including a third-party complaint, to determine whether there is a duty to defend.* After all, the trial court ' "need not wear judicial blinders" and may look beyond the complaint at other evidence appropriate to a motion for summary judgment.' [Citations.]" (Emphasis added.) *Holabird & Root*, 382 Ill. App. 3d at 1024, 1031-32.

The appellate court herein also relied upon *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05 (1983), in which the court affirmed the trial court's entry of a declaratory judgment in favor of an insurance company, holding that the trial court could look beyond the underlying complaint in determining the duty to defend. The court in *Envirodyne Engineers, Inc.* stated the rationale for its holding as follows:

> "[W]e find no support for Envirodyne's contention that the court may not look beyond the underlying complaint even in a declaratory proceeding where the duty to defend is at

---

[4]The court noted that its consideration of the third-party complaint that alleged Metrick installed the lights did not determine an issue crucial to the Cogtella lawsuit or the ultimate finding of negligence. *Holabird & Root*, 382 Ill. App. 3d at 1032.

issue. It is certainly true that the duty to defend flows in the first instance from the allegations in the underlying complaint; this is the concern at the initial stage of the proceedings when an insurance company encounters the primary decision of whether to defend its insured. However, if an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions. [Citations.] The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit [citations] \*\*\*. If a crucial issue will not be determined, we see no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding. *To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.*" (Emphasis added.) *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 304-05.

We believe that *Holabird & Root* and *Envirodyne Engineers, Inc.* set forth the proper considerations for a circuit court to use in deciding whether it is appropriate to examine evidence beyond that contained in the underlying complaint in determining the duty to defend. Having said this, we are conscious of the fact that both *Holabird & Root* and *Envirodyne Engineers, Inc.* involved summary judgment proceedings in which not only the contents of third-party complaints in the underlying action but other evidence may be considered in determining the insurer's duty to defend. In the case at bar, however, we are dealing with a grant of judgment on the pleadings which, as earlier stated, is like a motion for summary judgment, but limited to the pleadings, and is properly granted only if the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Employers Insurance of Wausau*, 186 Ill. 2d at 138. Thus, the question here is

whether, after considering all the pleadings in the declaratory judgment action, the court could find that no genuine issue of material fact existed.

In support of its motion for judgment on the pleadings, Pekin submitted, as "attached hereto and incorporated herein," its amended complaint for declaratory judgment, Wilson's answer and counterclaim to Pekin's amended complaint for declaratory judgment, Pekin's answer to Wilson's counterclaim and, attached as exhibits to Pekin's amended complaint for declaratory judgment, the policy of insurance issued by Pekin to Wilson and the complaint and amended complaint filed by Johnson against Wilson in the underlying lawsuit. Noticeably absent from Pekin's motion for judgment on the pleadings is Wilson's answer and counterclaim in the underlying lawsuit, assumedly because Pekin asserts that Wilson's pleadings in that suit cannot be considered.

Pekin's motion prays for entry of judgment on the pleadings finding, *inter alia*, that its policy "do[es] not apply in respect to the claims asserted by *** Johnson" in the underlying lawsuit, *i.e.*, intentional torts, and that it has "no duty or obligation to defend *** Wilson in [the underlying action]." Thus, Wilson's counterclaim, as part of the pleadings in the underlying lawsuit for which Pekin asked the court's determination of its duty to defend and provide coverage, must be considered in deciding the motion for judgment on the pleadings. Further, because the policy at issue included a self-defense exception to its intentional-act exclusion which the underlying complaint did not address, Wilson's counterclaim must be examined for the presence of allegations of fact sufficient to trigger that self-defense exception. Otherwise, there is no way to determine if a genuine issue of material fact exists as to whether the pleadings are "substantially insufficient in law." See 735 ILCS 5/2–615(b) (West 2006) ("If a pleading or a division thereof is objected to by a motion to dismiss or for judgment or to strike out the pleading, because it is substantially insufficient in law, the motion must specify wherein the pleading or division thereof is insufficient").

Here, Wilson's counterclaim in the underlying lawsuit alleged that because of the physical size difference between Wilson and Johnson, Wilson had armed himself with a piece of thin wall conduit and, "without moving in any threatening manner but merely possessing the

pipe as to defend himself from *** Johnson, renewed his demand that Johnson leave the premises." Thereafter, Johnson, without provocation, "came forward, grabbed Wilson, took the pipe away from him, and smashed his head and face into the wall." Therefore, a comparison of Wilson's counterclaim to Johnson's allegations in the underlying complaint, *i.e.*, that intentional conduct instigated by Wilson caused injury to Johnson, shows that a genuine issue of material fact exists regarding whether Pekin has a duty to defend Wilson because it excepted self-defense from its intentional-act exclusion. 391 Ill. App. 3d at 512-13.

Additionally, Wilson's memorandum in response to Pekin's motion for judgment on the pleadings in the declaratory judgment action states, *inter alia*, that Wilson "has consistently denied that he improperly harmed or intended to harm *** Johnson *** [and] asserts that he picked up a piece of conduit *** in self defense of a larger threatening person (Johnson)." Wilson also states that Pekin had taken a statement from him which included a copy of the police report received regarding acts alleged in the underlying lawsuit. This police report, attached and incorporated by reference to Wilson's memorandum, indicates that while Johnson received a laceration to his finger, no knife could be located and a deputy investigating the incident believed the injury to Johnson's hand "could have been made by the end of the pipe." Wilson therefore argued that where, in his pleadings, he alleges he held a piece of conduit in self defense and was then attacked, and denies any use of a knife and no knife was found, "these factual inconsistencies support the denial of [Pekin's] Motion." Thus, contrary to Pekin's contention, Wilson's counterclaim alleging that Johnson grabbed the pipe Wilson wielded in self-defense, together with the allegation in Johnson's complaint that he subdued and restrained Wilson, suggest that Johnson's injury could have resulted from Wilson's act of self-defense. As previously stated, it was incumbent upon the trial court, for purposes of resolving Pekin's motion for judgment on the pleadings, to consider as admitted all well-pleaded facts set forth in the pleadings of the nonmoving party, and the fair inferences drawn therefrom. See *Employers Insurance of Wausau*, 186 Ill. 2d at 138.

In addition to the necessity under section 2–615(e) for the trial court to have examined the allegations in Wilson's counterclaim, we

find that here, unlike *National Union Fire Insurance Co.* and *L.J. Dodd Construction, Inc.*, there were "unusual or compelling circumstances" requiring the trial court to go beyond the sole allegations of the underlying complaint to determine the insured's duty to defend. As the appellate court herein stated:

> "It is clear to this court that if an insurance company has a right to present evidence beyond the complaint in the underlying lawsuit to show that it has *no* duty to defend, the insured has the same right to present evidence to show that there *is* a duty to defend. Where coverage depends upon whether an insured was acting in self-defense, it is crucial for the court to consider all the evidence presented before entering a declaratory judgment, since it is unlikely that the plaintiff in the underlying lawsuit will plead facts to show that the insured acted in self-defense. Typically, self-defense is raised as an affirmative defense. 735 ILCS 5/2–613 (West 2006). In the underlying case presented here, as a part of his counterclaim against Johnson, Wilson alleged facts tending to show that he acted in self-defense. See 735 ILCS 5/2–608 (West 2006)." (Emphases in original.) 391 Ill. App. 3d at 515.

Pekin argues that sole consideration of the allegations of the underlying complaint is proper even when the self-defense exception to the intentional-act exclusion of its policy may be involved. However, we agree with the appellate court below that it is "unlikely" that the underlying complaint would set forth allegations supporting a basis for defending Pekin's insured under its self-defense exception. There is no possible reason for Johnson, suing in tort for the intentional conduct of Wilson, to allege that Wilson's actions were excused by, as the policy states: " 'bodily injury' resulting from the use of reasonable force to protect persons or property." Thus, unless Wilson, as the defendant-insured in the underlying lawsuit, is allowed to plead facts alleging that the plaintiff's injury occurred through Wilson's reasonable use of self-defense, there is no way for the self-defense exclusion to be triggered, and the coverage is illusory.

We cannot find that the parties intended the coverage of this commercial general liability policy to be so construed. See *Cincinnati Insurance Co. v. Gateway Construction Co.*, 372 Ill. App. 3d 148, 152 (2007) (a reviewing court will not interpret an insurance policy in

such a way that any of its terms are rendered meaningless or superfluous). To the contrary, we find that, in light of the broad scope of this type of policy, and the clear language of the self-defense exception, the policy requires the defense of the insured where a genuine issue of material fact exists as to whether the intentional acts of the insured were committed in self-defense. See *Outboard Marine Corp.*, 154 Ill. 2d at 117 (in light of broad scope of comprehensive general liability policy, and the popular meaning of "damages," under the facts of the case, the underlying actions were "suits seeking damages" which triggered the insurer's duty to defend its insured).

Indeed, if Pekin actually desired to exclude coverage for *all* lawsuits arising from the intentional conduct of its insured, it would be illogical for it to have included the self-defense exception in the policy to begin with. See *Outboard Marine Corp.*, 154 Ill. 2d at 117.

Having promised such coverage to Wilson, "Pekin cannot now choose to ignore pleadings *** that indicate a duty to defend under the self-defense exception." 391 Ill. App. 3d at 515.

> "Pekin agreed that it would have 'the right and duty to defend' any lawsuit seeking damages for bodily injury. It excluded coverage for bodily injury that is 'expected or intended from the standpoint of the insured,' but it provided that the intentional-act exclusion would 'not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.' Pekin drafted the policy, sold it to Wilson, and required him to pay the premiums for that coverage. When Wilson was sued for his intentional acts, he not only denied any intent to harm Johnson but also filed a pleading indicating that he was merely defending himself during the altercation. The pleadings raise issues of fact that trigger Pekin's duty to defend Wilson under the self-defense exception. Pekin must now honor its agreement by defending Wilson in the underlying lawsuit." 391 Ill. App. 3d at 513.

We wish to emphasize that in addition to agreeing with the appellate court herein that Pekin has a duty to defend Wilson, we also agree with that court that this decision does not resolve any issue critical to the underlying lawsuit. 391 Ill. App. 3d at 515; see also *Holabird & Root*, 382 Ill. App. 3d at 1031. In contrast, if we were to agree with Pekin that the trial court properly granted its motion for

judgment on the pleadings based solely on the underlying complaint and the intentional-act exclusion in the policy, we would, in essence, be condoning the resolution of the issue at the heart of the underlying lawsuit. Rather, where Pekin filed a motion for judgment on the pleadings, it should only have been granted if the admissions contained within the pleadings revealed no genuine issue of material fact such that the movant would be entitled to judgment as a matter of law, and the court should have considered all well-pleaded facts of the *nonmoving* party, and the fair inferences to be drawn therefrom. Thus, our holding is limited to reversing the trial court's grant of judgment on the pleadings to Pekin and allowing Wilson's counterclaim against Pekin in the declaratory judgment action to go forward.[5]

## CONCLUSION

The trial court erred in failing to consider Wilson's counterclaim in the underlying lawsuit in deciding Pekin's motion for judgment on the pleadings in this declaratory judgment action. Therefore, we affirm both the appellate court's reversal of the circuit court's grant of judgment on the pleadings in favor of Pekin, and the appellate court's reversal of the dismissal of Wilson's counterclaim against Pekin.

*Appellate court judgment affirmed.*

---

[5]We note that Pekin alternatively argues that because the underlying lawsuit alleges only intentional acts, and its policy covers bodily injury caused solely by accidental occurrences, the circuit court had an independent basis for granting judgment on the pleadings. However, as we have found that all relevant portions of the policy must be considered in determining the insurer's duty to defend, the self-defense exception to the intentional act exclusion in Pekin's policy is indeed relevant to the circuit court's determination of this declaratory judgment action.

-17-