# Illinois Official Reports

## Appellate Court

---

**St. Paul Fire & Marine Insurance Co. v. City of Zion**, 2014 IL App (2d) 131312

---

| | |
|---|---|
| Appellate Court Caption | ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellee, v. THE CITY OF ZION, THE COUNTY OF LAKE, KEVIN HARRIS, MARK CURRAN, TIMOTHY JONITES, and ROBERT DEVER, Defendants (Jerry Hobbs III, Defendant-Appellant; The City of Waukegan, Domenic Capelluti, Charles Schletz, and William Valko, Defendants and Counterplaintiffs; Illinois County Risk Management Trust, Intervenor-Appellant; and American Alternative Insurance Corporation, Certain Underwriters at Lloyd's London, and Princeton Excess and Surplus Lines Insurance Company, Intervenors). |
| District & No. | Second District<br>Docket Nos. 2-13-1312, 2-13-1313 cons. |
| Filed | September 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the insurance coverage for the malicious prosecution claim filed by the underlying individual against defendant city alleging that two of the city's police officers coerced him into confessing to the murder of his daughter and her friend, the trial court properly entered summary judgment for plaintiff insurer on the ground that the occurrence triggering the malicious prosecution claim was the filing of the criminal complaint, which occurred on May 9, 2005, but coverage under a series of policies issued by plaintiff did not become effective until after the date the criminal complaint was filed. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-MR-2227; the Hon. Margaret J. Mullen, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Michael W. Rathsack, of Michael Rathsack Law Office, of Chicago, and Kathleen T. Zellner and Douglas H. Johnson, both of Kathleen T. Zellner & Associates, P.C., of Downers Grove, for appellants. |
| | Daniel G. Litchfield, Dennis M. Dolan, and Laura L. Milnichuk, all of Litchfield Cavo, LLP, of Chicago, for appellee. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Schostok and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1 The issue in this appeal is whether a malicious-prosecution claim filed by Jerry Hobbs III against the City of Zion and its police officer Kevin Harris triggered coverage under an insurance policy that St. Paul Fire and Marine Insurance Company issued to Zion. Resolution of this issue depends upon whether the occurrence triggering coverage under the policy is the commencement of the alleged malicious prosecution or its termination in favor of the accused. We hold that, under the unambiguous language of the policy, the occurrence triggering coverage is the commencement of the alleged malicious prosecution. Here, that occurrence took place outside the policy period. Therefore, we affirm the grant of summary judgment in St. Paul's favor.

¶ 2                             I. BACKGROUND

¶ 3 Hobbs was charged with murdering his eight-year-old daughter and her nine-year-old friend. After DNA evidence excluded Hobbs as the perpetrator, and after Hobbs had spent five years in jail awaiting trial, the charges were dismissed. On December 1, 2010, Hobbs filed a federal action against Zion, Harris, and a number of other defendants. *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 752 (N.D. Ill. 2012). Hobbs alleged that Harris and the other defendant officers coerced him into falsely confessing to the murders. Among other claims, Hobbs alleged malicious prosecution under Illinois law. *Hobbs*, 899 F. Supp. 2d at 752.

¶ 4 After Hobbs initiated the federal action, St. Paul filed this declaratory judgment action in the circuit court of Lake County against Zion, Harris, Hobbs, and other defendants. In its complaint, St. Paul alleged that it issued a series of insurance policies to Zion for periods

covering December 1, 2006, to December 5, 2010,[1] all of which included law enforcement liability coverage. The complaint alleged that, although the State dismissed Hobbs's murder charges on August 4, 2010, which was within the 2009-10 policy period, it filed the murder charges on May 9, 2005, prior to the effective date of the first policy. St. Paul sought a declaration that the allegations of Hobbs's federal complaint did not trigger coverage under the 2009-10 policy, because the occurrence triggering coverage of a malicious-prosecution claim is the commencement of the wrongful prosecution, not its termination in favor of the accused.

¶ 5        Illinois County Risk Management Trust (ICRMT), which insured Zion and Harris when the Hobbs murder prosecution commenced, intervened in the action and filed a complaint in intervention against St. Paul, Zion, Harris, and Hobbs. ICRMT took the position that the occurrence triggering coverage was the favorable termination of the prosecution.

¶ 6        St. Paul filed a motion for summary judgment on its complaint, and ICRMT filed a motion for summary judgment on its complaint in intervention. Zion and Harris sided with ICRMT and opposed St. Paul's motion for summary judgment. In a written decision, the trial court agreed with St. Paul that the occurrence triggering coverage under its policy is the commencement of a malicious prosecution. Accordingly, the court entered summary judgment in St. Paul's favor and against Zion and Harris. The court denied ICRMT's motion for summary judgment. St. Paul subsequently moved for summary judgment on ICRMT's complaint in intervention, which the trial court granted. ICRMT and Hobbs[2] timely appeal.

¶ 7                                              II. ANALYSIS

¶ 8        On appeal, ICRMT and Hobbs, who have filed a joint brief, maintain that the trial court erred in determining that the occurrence triggering coverage of a malicious-prosecution claim under the 2009-10 St. Paul policy is the commencement of the prosecution. They contend that, under Illinois law, termination of a prosecution in favor of the accused is the final element of the tort of malicious prosecution. Accordingly, they maintain, there is no claim for which an insurance policy could provide coverage until the prosecution has been favorably terminated.

¶ 9        The trial court granted summary judgment in St. Paul's favor. Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 28. We review *de novo* an order granting summary judgment. *Precision Dose*, 2012 IL App (2d) 110195, ¶ 29.

---

[1]Because this appeal involves only the policies insuring Zion and Harris, we limit our discussion to these policies. St. Paul issued similar policies to the City of Waukegan and to Lake County, which were also defendants in the declaratory judgment action.

[2]Hobbs appeals as an assignee of Zion and Harris. Although Hobbs originally was named as a defendant in St. Paul's declaratory judgment complaint, he was voluntarily dismissed by stipulation of the parties. Subsequently, in the federal action, Hobbs settled his claims against Zion and Harris. Pursuant to the settlement agreement, Zion and Harris assigned to Hobbs their rights to pursue coverage from St. Paul. Hobbs then intervened in the declaratory judgment action as an assignee of Zion and Harris.

Additionally, we review *de novo* the construction of an insurance policy. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010).

¶ 10    In construing an insurance policy, a court's primary task is to ascertain the intent of the parties as expressed in their agreement. *Wilson*, 237 Ill. 2d at 455. Courts construe a policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purpose of the entire policy. *Wilson*, 237 Ill. 2d at 456. If terms in a policy are unambiguous, courts afford them their plain, ordinary, and popular meaning. *Wilson*, 237 Ill. 2d at 455-56. If terms are ambiguous, they will be strictly construed against the insurer. *Wilson*, 237 Ill. 2d at 456.

¶ 11    On appeal, ICRMT and Hobbs limit their arguments to two sections of the St. Paul policy: the general liability section and the law enforcement liability section. The general liability section provides, in pertinent part, that St. Paul will pay damages for personal injury that is caused by malicious prosecution committed during the policy period. However, as St. Paul points out, the general liability section contains an exclusion for injury or damage that results from law enforcement activities or operations. The policy defines law enforcement activities or operations as "any of the official activities or operations of your police department, sheriff agency, or other public safety organization which enforces the law and protects persons or property." At oral argument, ICRMT and Hobbs conceded that the law enforcement liability exclusion applies here and that the general liability section cannot provide coverage. Therefore, we turn to the law enforcement liability section.

¶ 12    The law enforcement liability section provides, in pertinent part, that St. Paul will "pay amounts any protected person is legally required to pay as damages for covered injury or damage" that (1) "results from law enforcement activities or operations by or for you," (2) "happens while this agreement is in effect," and (3) "is caused by a wrongful act that is committed while conducting law enforcement activities or operations." The policy defines "[i]njury or damage" as "bodily injury, personal injury, or property damage." It defines "[p]ersonal injury," in pertinent part, as "injury *** caused by *** [m]alicious prosecution." It defines "[w]rongful act" as "any act, error, or omission."

¶ 13    In arguing that the favorable termination of a malicious prosecution is the occurrence that triggers coverage under the law enforcement liability section, ICRMT and Hobbs contend that the section provides coverage for "the wrongful act of malicious prosecution." Thus, they maintain, coverage is triggered once "all the elements" of malicious prosecution, including favorable termination of the prosecution, are "in place."

¶ 14    ICRMT and Hobbs misconstrue the plain language of the policy. Unlike the general liability section, the law enforcement liability section does not require that the "offense" of malicious prosecution be "committed" while the policy is in effect. Instead, the law enforcement liability section provides coverage if the "injury" caused by malicious prosecution "happens" while the policy is in effect. Accordingly, in order to determine whether a malicious-prosecution claim triggers coverage under the law enforcement liability section, we need to determine when the "injury" resulting from malicious prosecution "happens," not when the "offense" is "committed."

¶ 15    The elements of a malicious-prosecution claim under Illinois law are well established. *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 272 (1997). The elements are (1) the commencement of judicial proceedings by the defendant, (2) a lack of probable cause for the proceedings, (3) malice in instituting the proceedings, (4)

termination of the prosecution in the plaintiff's favor, and (5) damage or injury to the plaintiff. *Cult Awareness Network*, 177 Ill. 2d at 272; *Reed v. Doctor's Associates, Inc.*, 355 Ill. App. 3d 865, 873 (2005). Although a plaintiff alleging malicious prosecution based on a civil proceeding must establish some "special injury" beyond the usual expense, annoyance, and inconvenience of defending a lawsuit, a plaintiff alleging malicious prosecution based on a criminal proceeding need not show special injury. *Voga v. Nelson*, 115 Ill. App. 3d 679, 682 (1983).

¶ 16    The only Illinois case to address the issue of which occurrence triggers insurance coverage of a malicious-prosecution claim is *Security Mutual Casualty Co. v. Harbor Insurance Co.*, 65 Ill. App. 3d 198 (1978), *rev'd*, 77 Ill. 2d 446 (1979). *Security Mutual* involved a reinsurance policy that contained an arbitration clause. *Security Mutual*, 65 Ill. App. 3d at 200. A dispute arose over coverage of a malicious-prosecution claim, and the trial court determined that the dispute was subject to arbitration. *Security Mutual*, 65 Ill. App. 3d at 201-02. On appeal, instead of directly addressing the arbitration issue, the court identified the "threshold issue" as whether the malicious-prosecution offense took place within the period of the reinsurance policy. *Security Mutual*, 65 Ill. App. 3d at 203. The court did not discuss the policy language and instead determined that, because favorable termination was the final element of a malicious-prosecution cause of action, coverage was not triggered until the prosecution was favorably terminated. *Security Mutual*, 65 Ill. App. 3d at 205-06. According to the court, because the policy expired before the malicious prosecution at issue was favorably terminated, there was no coverage issue subject to arbitration. *Security Mutual*, 65 Ill. App. 3d at 206.

¶ 17    The supreme court granted leave to appeal and reversed. *Security Mutual*, 77 Ill. 2d at 451. The court held that the appellate court exceeded the scope of review when it *sua sponte* addressed the "trigger" issue. *Security Mutual*, 77 Ill. 2d at 451. The court reasoned that the coverage dispute was subject to arbitration regardless of whether the insured's claim to coverage was valid. *Security Mutual*, 77 Ill. 2d at 451.

¶ 18    The appellate court's decision in *Security Mutual* is not helpful here. Not only did the supreme court reverse the decision, but also the appellate court looked solely to the elements of a cause of action for malicious prosecution in determining which occurrence triggered insurance coverage. It is well settled that a court construing an insurance policy must ascertain the intent of the parties from the policy's language. *Wilson*, 237 Ill. 2d at 455. Here, as noted above, the St. Paul policy provides coverage for a malicious-prosecution claim if the "injury" caused by the malicious prosecution "happens while th[e] agreement is in effect." The appellate court's decision in *Security Mutual* provides no guidance for interpreting this language.

¶ 19    Because no other Illinois court has addressed the issue of which occurrence triggers insurance coverage of a malicious-prosecution claim, we look to out-of-state authority for guidance. Most courts that have addressed the issue have held that the commencement of a malicious prosecution is the event that triggers insurance coverage. See *City of Erie v. Guaranty National Insurance Co.*, 109 F.3d 156, 160 (3d Cir. 1997) ("[T]he clear majority of courts have held the tort [of malicious prosecution] occurs [for insurance purposes] when the underlying criminal charges are filed."). Although some courts have repeated *Security Mutual*'s mistake by not addressing the specific language of the policies at issue, others have properly limited their holdings to the language of the policies before them. See *Harbor*

*Insurance Co. v. Central National Insurance Co.*, 165 Cal. App. 3d 1029, 1034 (Cal. Ct. App. 1985) (criticizing a trial court for "fashion[ing] a general 'occurrence' rule of coverage, rather than focusing, as it should have, upon the particular language of the policies involved").

¶ 20   The first court to adopt what would become the majority position was the Superior Court of New Jersey in *Muller Fuel Oil Co. v. Insurance Co. of North America*, 232 A.2d 168 (N.J. Super. Ct. App. Div. 1967). The insurance policy at issue in *Muller Fuel* provided that the insurer would pay " 'all sums which the insured shall become Legally obligated to pay as damages.' " *Muller Fuel*, 232 A.2d at 174. After the insured was sued for malicious prosecution based on a criminal prosecution that was terminated in the accused's favor during the policy period, the insured filed a declaratory judgment action. *Muller Fuel*, 232 A.2d at 170. It argued that coverage was triggered because it could not become legally obligated to pay damages until the cause of action against it "fully ripen[ed]," which was when the alleged malicious prosecution was favorably terminated. *Muller Fuel*, 232 A.2d at 174.

¶ 21   The court rejected the insured's argument, reasoning that four of the five elements of the tort of malicious prosecution occur when a prosecution is initiated. *Muller Fuel*, 232 A.2d at 174-75. The court stated that "damage flows immediately from the tortious act" of filing a criminal complaint with malice and without probable cause. *Muller Fuel*, 232 A.2d at 174. According to the court, "although a favorable termination of the criminal proceeding is a condition precedent to institution of the action, the 'essence' of the tort is the wrongful conduct in making the criminal charge." *Muller Fuel*, 232 A.2d at 174. The court held that "[i]t would be unreasonable to hold" that the parties intended the policy to provide coverage for a malicious-prosecution claim when "four of the five essential ingredients" of the claim preceded the effective date of the policy. *Muller Fuel*, 232 A.2d at 175.

¶ 22   In reaching its holding, the court in *Muller Fuel* emphasized that "[t]he tort of malicious prosecution is Sui generis." *Muller Fuel*, 232 A.2d at 174. It explained that, in the negligence context, the sustaining of damages is the final element that marks accrual of the cause of action; thus, the occurrence triggering insurance coverage is simultaneous with the accrual of the cause of action. *Muller Fuel*, 232 A.2d at 175. In the malicious-prosecution context, by contrast, the sustaining of damages is not the final element. *Muller Fuel*, 232 A.2d at 175. Rather, the cause of action accrues when the criminal proceeding has been favorably terminated. *Muller Fuel*, 232 A.2d at 175. According to the court, this explains why the occurrence triggering insurance coverage of a malicious-prosecution claim may precede the accrual of the cause of action. *Muller Fuel*, 232 A.2d at 175.

¶ 23   Although the language of the policy in *Muller Fuel* significantly differs from the language of the law enforcement liability section of the St. Paul policy, the case nevertheless is instructive. As noted above, based on the language of the law enforcement liability section of the St. Paul policy, the issue this court must resolve is when the "injury" resulting from malicious prosecution "happens." According to the court in *Muller Fuel*, the injury "flows immediately from the tortious act" of filing a criminal complaint with malice and without probable cause. *Muller Fuel*, 232 A.2d at 174. Indeed, this must be the case, because the favorable termination of a malicious prosecution marks the "beginning of the judicial system's remediation" of the wrong committed, not the commencement of the injury or damage. *Town of Newfane v. General Star National Insurance Co.*, 784 N.Y.S.2d 787, 792

- 6 -

(N.Y. App. Div. 2004). Stated another way, "it is difficult to see how [a criminal defendant's] release from prison can be described as an 'injury' in any sense of the word." *Gulf Underwriters Insurance Co. v. City of Council Bluffs*, 755 F. Supp. 2d 988, 1008 (S.D. Iowa 2010); see also *Billings v. Commerce Insurance Co.*, 936 N.E.2d 408, 413 (Mass. 2010) (noting that favorable termination of a prosecution "is not an event that causes harm").

¶ 24    Other courts have relied on similar reasoning in construing policy language providing coverage for malicious prosecution. In *Royal Indemnity Co. v. Werner*, 979 F.2d 1299 (8th Cir. 1992), for example, the policy at issue provided coverage for "personal injury" that occurred during the policy period, and it defined "personal injury" as including malicious prosecution. *Royal Indemnity*, 979 F.2d at 1299. The Eighth Circuit reasoned that it was "improbable that the term 'personal injury' is used in a technical sense to speak of a time when a cause of action has fully matured." *Royal Indemnity*, 979 F.2d at 1300. According to the court, the term was "more likely intended to describe the time when harm begins to ensue, when injury occurs to the person, that is *** when the relevant law suit is filed." *Royal Indemnity*, 979 F.2d at 1300.

¶ 25    Given the language of the law enforcement liability section of the St. Paul policy, we conclude that the same result is warranted here. Again, the law enforcement liability section provides, in pertinent part, that St. Paul will "pay amounts any protected person is legally required to pay as damages for covered injury or damage" that "happens while this agreement is in effect." It then defines "[i]njury or damage" as including "personal injury" and defines "[p]ersonal injury" as including "injury *** caused by *** [m]alicious prosecution." Read together, these provisions state that St. Paul will pay damages for injury that happens while the agreement is in effect and that is caused by malicious prosecution. Because injury results upon the commencement of a malicious prosecution, it is the commencement of the prosecution that triggers insurance coverage under the policy. Favorable termination of the prosecution cannot be the occurrence that triggers coverage, because termination marks the "beginning of the judicial system's remediation" of the wrong committed, not the commencement of the injury or damage. *Town of Newfane*, 784 N.Y.S.2d at 792; see also *Billings*, 936 N.E.2d at 413 (noting that favorable termination of a prosecution "is not an event that causes harm").

¶ 26    Nevertheless, ICRMT and Hobbs contend that "technically there is no injury until favorable termination." According to them, "[o]ne cannot suffer an injury until the prosecution is malicious, and that is not determined until the person charged is exonerated." This argument is not persuasive, and ICRMT and Hobbs cite no authority to support it. As a number of courts have correctly reasoned, a maliciously prosecuted criminal defendant suffers injury and damage immediately upon being prosecuted. *Gulf Underwriters Insurance*, 755 F. Supp. 2d at 1008; *Harbor Insurance*, 165 Cal. App. 3d at 1037; *Muller Fuel*, 232 A.2d at 174. When a prosecution is commenced, the accused "is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected." *Muller Fuel*, 232 A.2d at 174. "At that point the tortfeasor has invoked the judicial process against the victim maliciously and without probable cause, and the victim has thereby suffered damage." *Harbor Insurance*, 165 Cal. App. 3d at 1037. "Although continued proceedings after commencement of the action will increase and aggravate the defendant's damages, the initial wrong and consequent harm have been committed upon commencement of the action and initial impact thereof on the defendant." *Harbor Insurance*, 165 Cal. App. 3d at 1037; see

also *Paterson Tallow Co. v. Royal Globe Insurance Cos.*, 444 A.2d 579, 584 n.3 (N.J. 1982) (applying the same reasoning).

¶ 27    Stating their argument in a slightly different way, ICRMT and Hobbs maintain that "there cannot be a tortious injury until there is first a tort." This is circular reasoning. Simply because a cause of action for malicious prosecution does not accrue until the prosecution has been terminated does not mean that the injury does not occur until the prosecution has been terminated. The termination of the prosecution is the final element that marks accrual of the cause of action. If no injury preceded the termination of the prosecution, then no cause of action would accrue at that point. Indeed, injury resulting from malicious prosecution often precedes accrual of the cause of action by a number of years, or even decades in some cases.

¶ 28    ICRMT and Hobbs similarly argue that, because the policy provides coverage only if Zion is "legally required to pay" damages for a covered injury, the tort of malicious prosecution must accrue before coverage is triggered. In other words, they contend, Zion could not be "legally required to pay" damages until the final element of the tort has occurred. While ICRMT and Hobbs are correct that there cannot be liability before the cause of action has accrued, this has no bearing on when the injury resulting from malicious prosecution occurs. The language "legally required to pay" qualifies the damages that St. Paul will indemnify; it does not define the occurrence that triggers coverage under the policy.

¶ 29    We also reject ICRMT and Hobbs's contention that the reasoning of courts adopting the minority position is more persuasive and should be followed here. Relying on these cases, ICRMT and Hobbs contend that, because there is "no tort of malicious prosecution" until a prosecution has been terminated, there can be no insurance coverage until that time.

¶ 30    Six cases have adopted the minority position that termination of a malicious prosecution is the occurrence that triggers insurance coverage. The appellate court's decision in *Security Mutual* is one of them, and we have already explained why that case is not helpful here. Three of the minority-position cases are Seventh Circuit cases, decided under Illinois law, that have relied on *Security Mutual* as the only Illinois case to have addressed the issue. *Northfield Insurance Co. v. City of Waukegan*, 701 F.3d 1124 (7th Cir. 2012); *American Safety Casualty Insurance Co. v. City of Waukegan*, 678 F.3d 475 (7th Cir. 2012); *National Casualty Co. v. McFatridge*, 604 F.3d 335 (7th Cir. 2010). The only other cases to adopt the minority position are *Sauviac v. Dobbins*, 06-CA-666 (La. App. 5 Cir. 12/27/06); 949 So. 2d 513, and *Roess v. St. Paul Fire & Marine Insurance Co.*, 383 F. Supp. 1231 (M.D. Fla. 1974).

¶ 31    Addressing the three Seventh Circuit cases first, we note that none of them are particularly persuasive given their reliance on *Security Mutual*. In each case, the Seventh Circuit noted that *Security Mutual* was reversed "on other grounds." (Emphasis omitted.) *Northfield*, 701 F.3d at 1132; *American Safety*, 678 F.3d at 478; *National Casualty*, 604 F.3d at 345. Nevertheless, the Seventh Circuit has continued to follow *Security Mutual* as the only relevant Illinois authority, explaining that it would be improper to "singlehandedly modify the Illinois rule without some new direction from the state." *Northfield*, 701 F.3d at 1132.

¶ 32    Furthermore, to the extent that the Seventh Circuit has explicitly agreed with *Security Mutual*'s holding, the Seventh Circuit's reasoning is inapplicable here. In *American Safety*, the Seventh Circuit explicitly agreed with *Security Mutual*, explaining that, although injury is the final element for most torts, exoneration is the final element for malicious prosecution, and the "final element of the tort marks the occurrence." *American Safety*, 678 F.3d at 480.

- 8 -

The court further explained that the insurance policy at issue "identifie[d] the tort [of malicious prosecution] rather than the misconduct [giving rise to the tort] as the 'occurrence.'" (Emphases omitted.) *American Safety*, 678 F.3d at 479. Here, unlike in *American Safety*, the section of the insurance policy at issue defines as the occurrence the injury caused by malicious prosecution, not the tort of malicious prosecution.

¶ 33    The reasoning of the other two minority-position cases is similarly inapposite. In *Roess*, the federal district court, applying Florida law, ruled that favorable termination of a malicious prosecution is the operative occurrence that triggers coverage. *Roess*, 383 F. Supp. at 1235. The court reasoned that favorable termination of the prosecution is "an indispensable ingredient of the claim itself." *Roess*, 383 F. Supp. at 1235. Likewise, in *Sauviac*, the court held that the dismissal of a prosecution "necessarily form[s] part of the elementary basis for a cause of action for malicious prosecution" and is therefore the occurrence that triggers coverage. *Sauviac*, 06-CA-666, p. 13 (La. App. 5 Cir. 12/27/06); 949 So. 2d 513. Given the language of the law enforcement liability section of the St. Paul policy–which makes injury the occurrence that triggers coverage–neither *Roess*'s nor *Sauviac*'s reasoning applies here.

¶ 34    Our holding is limited to the language of the policy at issue. We have been careful not to repeat the mistake, made by a number of courts, of adopting a broad "occurrence" rule for coverage of malicious-prosecution claims in general. In essence, ICRMT and Hobbs urge this court to adopt a sweeping rule that favorable termination of a malicious prosecution is always the occurrence that triggers coverage. Adopting a broad, sweeping rule would be improper, as a court's task in construing an insurance policy is to ascertain the parties' intent from the language of the policy. We express no opinion regarding which occurrence would trigger coverage if a policy were to require the "offense" of malicious prosecution to be "committed" during the policy period, rather than, as here, requiring the "injury" caused by the prosecution to "happen" during the policy period.

¶ 35                                    III. CONCLUSION

¶ 36    For the foregoing reasons, we conclude that Hobbs's malicious-prosecution claim did not trigger coverage under the law enforcement liability section of the 2009-10 insurance policy issued by St. Paul to Zion. Therefore, we affirm the order of the circuit court of Lake County granting summary judgment in St. Paul's favor.

¶ 37    Affirmed.