PEKIN INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. JACK O. WILSON, Defendant-Appellant (Terry Johnson, Defendant).

Fifth District    No. 5—07—0571

Opinion filed June 8, 2009.

L. James Hanson, of Mt. Vernon, for appellant.

Robert Marc Chemers, Richard J. Siebert, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellees.

JUSTICE STEWART delivered the opinion of the court:

The defendant, Jack O. Wilson, appeals from an order of the Jefferson County circuit court entering a declaratory judgment in favor of the plaintiffs Pekin Insurance Company (Pekin) and Farmers Automobile Insurance Association (Farmers). The trial court determined that neither Pekin nor Farmers owed Wilson a duty to defend him in an underlying personal injury lawsuit, Johnson v. Wilson, No.

04—L—93 (the underlying lawsuit), which remains pending in the Jefferson County circuit court. We affirm as to Farmers and reverse and remand as to Pekin.

## BACKGROUND

In the underlying lawsuit, the plaintiff, Terry Johnson, alleged causes of action against Wilson for assault, battery, and intentional infliction of emotional distress. Wilson tendered the defense of the underlying lawsuit to both Pekin and Farmers. Pekin had issued a commercial general liability policy to Wilson covering the period of September 23, 2002, through September 23, 2003. Farmers had issued a homeowner's policy to Wilson covering the period of November 3, 2003, through May 3, 2004. On April 25, 2005, Pekin and Farmers jointly filed a complaint for a declaratory judgment, each asking the court for a determination that they did not owe Wilson a duty to defend the underlying lawsuit.

Johnson filed an amended complaint in the underlying lawsuit on August 31, 2005, adding a count alleging negligence against Wilson. In the amended complaint, Johnson alleged that on October 31, 2002, an incident had occurred at D&J Tarp Service, where, Johnson alleged, he had been "assisting Debi Wilson at her place of business." Johnson alleged that a second incident occurred in January 2004 at a Wal-Mart store. In the amended complaint, Johnson alleged that, at D&J Tarp Service, Wilson screamed expletives at him and "brandished" a steel pipe. Johnson alleged that Wilson struck him with the pipe. Johnson alleged that Wilson lacerated his hand with a knife. He alleged that Wilson threatened to go home to get a gun to shoot him and Debi Wilson. He also alleged that more than one year later, Wilson approached him at a Wal-Mart store and showed him "what appeared to be the handle of a pistol." Johnson alleged that Wilson said he could "end it right now."

In the negligence count, Johnson realleged all the factual assertions from the intentional tort counts (assault, battery, and intentional infliction of emotional distress). Johnson alleged that Wilson had breached his duty of ordinary care by failing to "adequately use tools of his employment in a safe manner[,] causing physical harm." He alleged that Wilson had failed to "properly maintain tools and knives in a protective manner" and that he had failed to "use tools for their intended purpose[,] causing physical harm." Finally, Johnson alleged that Wilson's negligence was the proximate cause of his injuries.

Pekin's policy covered Wilson as the "insured," and it described his business as a "private warehouse." The location of the premises covered is listed as "RR3 S35 T2S R2E, MOUNT VERNON, JEFFER-

SON CO, IL." In the coverages section, Pekin agreed to cover bodily injury and property damage liability as follows:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result."

Pekin listed the following exclusion to its bodily injury coverage:

" 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured" (the intentional-act exclusion).

To the intentional-act exclusion, Pekin provided the following exception:

"This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" (the self-defense exception).

In a section defining who is an insured, Pekin limited coverage to Wilson and his spouse, "but only with respect to the conduct of a business" of which they were the sole owners. In an endorsement to the policy, Pekin limited its coverage for bodily injury to occurrences "arising out of *** [t]he ownership, maintenance[,] or use of the premises shown in the Schedule and operations necessary or incidental to those premises."

The homeowners policy issued by Farmers defined the term "occurrence" as "an accident" that results in bodily injury or property damage during the policy period. The Farmers policy stated that "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies," Farmers would pay up to the limit of liability for the damages for which the insured was legally liable and "provide a defense at [its] own expense by counsel of [its] choice, even if the suit is groundless, false[,] or fraudulent." Farmers excluded coverage for bodily injury and property damage that was "expected or intended by the insured" but did not include a self-defense exception.

On October 5, 2005, Pekin and Farmers filed an amended complaint for a declaratory judgment, again seeking a declaration that they did not owe Wilson a duty to defend him in the underlying lawsuit. The amended complaint for a declaratory judgment was in response to Johnson's amended complaint in the underlying lawsuit, in which he added the negligence count against Wilson.

On October 11, 2005, Wilson filed an answer to the amended complaint in the underlying lawsuit. As a part of his answer, Wilson filed a counterclaim against Johnson, alleging that, during the incident

at D&J Tarp Service, Johnson was the aggressor and Wilson was defending himself. In his counterclaim, Wilson alleged that Johnson was guilty of assault, battery, and intentional infliction of emotional distress. In addition to the allegations that Johnson had been the aggressor in the altercation at D&J Tarp Service, Wilson also alleged in each of the three counts:

"Because of the physical size difference of \*\*\* Wilson and \*\*\* Johnson, [Wilson] picked up a piece of thin wall conduit used in the tarp service and, without moving in any threatening manner but merely possessing the pipe as to defend himself from \*\*\* Johnson, renewed his demand that Johnson leave the premises."

Wilson alleged that as a result of Johnson's conduct he sustained compensable damages in excess of $50,000 and that he was entitled to receive $100,000 in punitive damages and attorney fees.

On March 3, 2006, Wilson filed an answer to the amended complaint for a declaratory judgment, denying that Pekin and Farmers had no duty to defend him in the underlying lawsuit. Wilson contended that the allegations of the underlying lawsuit were covered by both policies and that the amended complaint in the underlying lawsuit alleged that "the occurrence took place during normal business hours at the premises where [Wilson's] business is located and to which the Pekin policy extends coverage." Wilson alleged that his business was located at "Rural Route 3 in Mt. Vernon, Illinois." Wilson filed counterclaims against Pekin and Farmers, alleging that they had breached their contracts with Wilson and that they were guilty of unreasonable and vexatious delay in violation of statute (215 ILCS 5/155 (West 2006)).

On September 18, 2006, Pekin and Farmers filed a motion for a judgment on the pleadings pursuant to section 2—615(e) of the Code of Civil Procedure (735 ILCS 5/2—615(e) (West 2006)). They argued that the negligence count of Johnson's amended complaint did not bring the underlying lawsuit within the coverage of either policy because Johnson had merely couched allegations of intentional conduct by Wilson in negligence terms. They argued that they were entitled to a judgment on the pleadings because there were no factual issues and it was clear they did not owe Wilson a duty to defend him in the underlying lawsuit.

Pekin also argued that its policy covered bodily injury only if the occurrence arose out of the ownership, maintenance, or use of the covered premises. Pekin contended that the "premises" covered in its policy was located at Rural Route 3, Mt. Vernon, Illinois, but that the underlying complaint alleged only that the incident occurred at D&J Tarp Service. Pekin alleged that D&J Tarp Service was located at

11020 East Graham Road, Mt. Vernon, Illinois. Similarly, Pekin alleged that there was no coverage for the incident that Johnson alleged to have occurred at the Mt. Vernon Wal-Mart store. In a related argument, Pekin argued that the underlying lawsuit was not covered under its policy because Johnson had not alleged that Wilson "was in any way involved in conducting his private warehouse business" at the time of the alleged incidents.

On October 10, 2006, Wilson filed a response to the motion for a judgment on the pleadings, arguing that the Pekin policy covered the incident at D&J Tarp Service because the "premises described are the very premises involved." Wilson argued that Pekin had taken a statement from him and was aware that he denied any intention to harm Johnson. Wilson argued that any harm that Johnson suffered "would have been by accident." He argued that the court should conclude that Johnson's allegations of negligence were sufficient to raise a duty to defend. He argued that Johnson's allegation that he was present at his place of business at the time of the October 31, 2002, incident raised an inference that he was involved in that business at that time, sufficient to raise a duty to defend. He argued that the court could not enter a judgment on the pleadings so long as the possibility existed that the jury could find that his conduct was not intentional.

On March 29, 2007, the trial court entered an order declaring that neither Pekin nor Farmers had a duty to defend Wilson in the underlying lawsuit because neither policy covered the claims asserted in that lawsuit. On April 30, 2007, Wilson filed a motion to reconsider, arguing, in pertinent part, that the order was premature because the jury in the underlying lawsuit could determine Wilson's conduct "to have been negligent." After hearing the parties' arguments, the court entered a docket order denying Wilson's motion to reconsider and dismissing his counterclaim in the declaratory judgment action. The underlying lawsuit and Wilson's counterclaim against Johnson in that lawsuit remain pending. Wilson filed a timely notice of appeal.

## ANALYSIS

Wilson argues that the trial court committed reversible error in finding that neither Pekin nor Farmers had a duty to defend him in the underlying lawsuit and in dismissing his counterclaim against them. The construction of the provisions of an insurance policy is a question of law (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992)) for which our review is *de novo. Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004). We also review the grant of a judgment on the pleadings *de novo. State Farm Fire &*

*Casualty Co. v. Tillerson*, 334 Ill. App. 3d 404, 407, 777 N.E.2d 986, 989 (2002).

> "A judgment on the pleadings should be entered if the admissions contained within the pleadings reveal no genuine issues of material fact such that the movant would be entitled to a judgment as a matter of law. [Citation.] We must consider that all well-pleaded facts by the nonmoving party are admitted. [Citation.] We must also examine the pleadings to determine whether a genuine issue of material fact exists, and if we find no such issue, then we determine if the matter at issue can be resolved solely as a matter of law." *Tillerson*, 334 Ill. App. 3d at 407, 777 N.E.2d at 989.

In order to determine whether the insurer has a duty to defend the insured, the court must initially look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance policy. *Outboard Marine Corp.*, 154 Ill. 2d at 107-08, 607 N.E.2d at 1212.

> "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. [Citations.] ***
>
> *** In construing an insurance policy, the court must ascertain the intent of the parties to the contract. [Citations.] To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured[,] and the purposes of the entire contract [citation]. If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning. [Citations.] However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy." (Emphasis omitted.) *Outboard Marine Corp.*, 154 Ill. 2d at 108-09, 607 N.E.2d at 1212.

Additionally, the insurer's duty to defend is much broader than its duty to indemnify. *Outboard Marine Corp.*, 154 Ill. 2d at 125, 607 N.E.2d at 1220.

With these principles in mind, we first compare the allegations in the underlying complaint with the provisions of the policies. The amended complaint in the underlying lawsuit alleges that Wilson intentionally assaulted, battered, and inflicted emotional distress on Johnson and that he negligently used and maintained the tools of his employment, causing injury to Johnson. Pekin and Farmers contend that the negligence count should not be considered because it is a "transparent attempt to trigger insurance coverage." They argue that the negligence count, which was not added until after they had filed

their declaratory judgment action, alleges only intentional conduct, regardless of the label Johnson applied to it. We agree. "The factual allegations of the complaint, rather than the legal theory under which the action is brought, determine whether there is a duty to defend." *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 520, 823 N.E.2d 986, 990 (2004) (the insurance company had no duty to defend the insured where the complaint in the underlying lawsuit alleged intentional conduct that was labeled as negligence).

In the case before us, in each of the counts, including the negligence count, Johnson alleged that Wilson had made derogatory remarks to him, screamed and yelled expletives at him, brandished a four-foot steel pipe, and struck him in the shoulder. Johnson alleged that "during that altercation," Wilson also "brandished a knife and lacerated" Johnson's right hand. Johnson alleged that, in order to protect himself, he subdued Wilson and restrained him as Wilson "continued to attempt to physically harm" him. He alleged that after he released Wilson, Wilson continued to yell expletives at him, and Wilson said that he was going home to get a gun to shoot both Johnson and Debi Wilson. Johnson alleged that more than a year later, he saw Wilson at a Wal-Mart store, Wilson showed him what appeared to be the handle of a pistol, and Wilson said that he could "end it right now."

In the negligence count, Johnson realleged the factual accounts of the incidents at the tarp shop and Wal-Mart and added allegations that were presumably designed to state a cause of action in negligence against Wilson: that Wilson had breached his duty of ordinary care by failing to adequately use or maintain the tools of his employment. However, we cannot reasonably construe the facts alleged as indicating that Wilson was negligent. The facts alleged are inconsistent with allegations of negligence. Accordingly, there is no genuine issue of material fact about the count that Johnson labeled as negligence or the assault, battery, or intentional infliction of emotional distress counts. Each count alleges intentional conduct that Wilson should have expected or intended, thus bringing all the allegations under the intentional-act exclusion. Were it not for the policy's self-defense exception, that would end our inquiry.

However, we must also ascertain the intent of the parties to the insurance contract by construing the policy as a whole, "with due regard to the risk undertaken, the subject matter that is insured[,] and the purposes of the entire contract." *Outboard Marine Corp.*, 154 Ill. 2d at 108, 607 N.E.2d at 1212. The Pekin policy excludes coverage for bodily injury that is "expected or intended from the standpoint of the insured" but then adds a self-defense exception stating that the

"expected or intended" exclusion does not apply to bodily injury "resulting from the use of reasonable force to protect persons or property." Therefore, when we construe Pekin's coverage, it is necessary to consider not only what is excluded but how the self-defense exception applies.

Pekin argues that in order for the self-defense exception to apply, the plaintiff in the underlying lawsuit must allege facts to trigger that coverage and that without such a third-party allegation, the self-defense exception cannot trigger coverage. For example, Pekin argues that a plaintiff in an underlying lawsuit could allege a negligent use of force in self-defense, a tort that would trigger coverage under this self-defense exception. See *State Farm Fire & Casualty Co. v. Leverton*, 289 Ill. App. 3d 855, 857, 683 N.E.2d 476, 478 (1997) (where the plaintiff in an underlying suit alleged that the insured's act of striking him was an unreasonable use of force in self-defense). Pekin contends that unless the allegation of negligence comes from a noninsured, the self-defense exception does not apply. According to Pekin, an insured's claim of self-defense does not trigger a duty to defend under its policy.

Pekin contends that Wilson's "legal defenses are not relevant to whether the underlying amended complaint falls within" the coverage of the policy it sold to him. We reject Pekin's argument because there is nothing in its policy to suggest that interpretation. The language of the policy is not ambiguous; it plainly states that it excludes coverage for bodily injury that is expected or intended from the standpoint of the insured unless the bodily injury results from the use of reasonable force to protect persons or property. The policy does not state that coverage under the self-defense exception depends upon the allegations in an underlying lawsuit. It does not require the self-defense allegations to be based on the conduct of a source other than the insured. In fact, the policy does not include any language to support Pekin's argument.

Here, Pekin drafted and sold an insurance policy that excludes coverage for intentional conduct by the insured unless the insured used reasonable force to protect persons or property. Therefore, we must consider the facts alleged in the underlying lawsuit as a whole, including the allegations in Wilson's counterclaim or any other defense he might plead; otherwise, the self-defense exception is largely a nullity and without any meaning. We will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous. *Cincinnati Insurance Co. v. Gateway Construction Co.*, 372 Ill. App. 3d 148, 152, 865 N.E.2d 395, 399 (2007).

In this case, the complaint in the underlying lawsuit alleges only intentional conduct, which is not covered, but Wilson raises the issue

of self-defense in the counterclaim he filed against Johnson. In that counterclaim, Wilson alleged that Johnson was the aggressor in the incident at D&J Tarp Service and that he was acting in self-defense: "Because of the physical size difference of *** Wilson and *** Johnson, [Wilson] picked up a piece of thin wall conduit used in the tarp service and, without moving in any threatening manner but merely possessing the pipe *as to defend himself from *** Johnson,* renewed his demand that Johnson leave the premises." (Emphasis added.) The underlying lawsuit remains pending and undetermined. There is a potential that the fact finder in that case could resolve the case by a finding that Wilson was acting in self-defense.

Therefore, Pekin has a duty to defend Wilson in the underlying lawsuit because it excepted self-defense from its intentional-act exclusion. Pekin agreed that it would have "the right and duty to defend" any lawsuit seeking damages for bodily injury. It excluded coverage for bodily injury that is "expected or intended from the standpoint of the insured," but it provided that the intentional-act exclusion would "not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." Pekin drafted the policy, sold it to Wilson, and required him to pay the premiums for that coverage. When Wilson was sued for his intentional acts, he not only denied any intent to harm Johnson but also filed a pleading indicating that he was merely defending himself during the altercation. The pleadings raise issues of fact that trigger Pekin's duty to defend Wilson under the self-defense exception. Pekin must now honor its agreement by defending Wilson in the underlying lawsuit.

In reaching this conclusion, we follow a line of Illinois cases holding that the court may look beyond the allegations of the complaint in the underlying lawsuit in order to determine an insurance company's duty to defend its insured. See *American Economy Insurance Co. v. Holabird & Root,* 382 Ill. App. 3d 1017, 1024, 886 N.E.2d 1166, 1172 (2008) (following a "long line of Illinois cases" in holding that the court "may consider evidence beyond the underlying complaint in determining an insurer's duty to defend"), *appeal allowed,* 229 Ill. 2d 617, 897 N.E.2d 249 (2008). *Holabird & Root* and the cases cited therein have established the rule that, in a declaratory judgment proceeding in which the court is called upon to resolve the question of an insurer's duty to defend, the first step in determining that duty is to compare the allegations of the complaint in the underlying case to the provisions of the insurance policy. However, the court may also look beyond the underlying complaint "if in doing so the trial court does not determine an issue critical to the underlying action." *Holabird & Root,* 382 Ill. App. 3d at 1031, 886 N.E.2d at 1178.

In *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05, 461 N.E.2d 471, 473-74 (1983), the appellate court affirmed the trial court's entry of a declaratory judgment in favor of an insurance company, holding that the trial court could look beyond the underlying complaint in determining the duty to defend. In *Envirodyne Engineers, Inc.*, the insured challenged the insurance company's right to present evidence beyond the underlying complaint to show that there was no duty to defend. *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 303, 461 N.E.2d at 472. The court in *Envirodyne Engineers, Inc.* stated the rationale for its holding as follows:

> "[W]e find no support for Envirodyne's contention that the court may not look beyond the underlying complaint even in a declaratory proceeding where the duty to defend is at issue. It is certainly true that the duty to defend flows in the first instance from the allegations in the underlying complaint; this is the concern at the initial stage of the proceedings when an insurance company encounters the primary decision of whether to defend its insured. However, if an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions. [Citations.] The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit [citations] ***. If a crucial issue will not be determined, we see no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding. *To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.*" (Emphasis added.) *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 304-05, 461 N.E.2d at 473-74.

Other cases adhere to this rule and rationale. In *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill. App. 3d 807, 816, 386 N.E.2d 529, 536 (1979), the court found a duty to defend where the insurance company had knowledge of true but unpleaded facts which, when taken together with the allegations of the underlying complaint, indicated that the claim was potentially within the policy's coverage. The court reasoned, "To hold otherwise would allow the insurer to construct a formal fortress of the third party's pleadings and to retreat behind its walls, thereby successfully ignoring true

but unpleaded facts within its knowledge that require it *** to conduct the putative insured's defense." *Associated Indemnity Co.*, 68 Ill. App. 3d at 816-17, 386 N.E.2d at 536; see also *Safeco Insurance Co. v. Brimie*, 163 Ill. App. 3d 200, 205-06, 516 N.E.2d 577, 580 (1987) (where an insurer sought a declaratory judgment, the court reviewed photographic and deposition testimony at a summary judgment hearing to determine the issue of coverage and held that the insurer did not have to wait until a complaint was filed in the underlying lawsuit to file its declaratory judgment action); *Mid America Fire & Marine Insurance Co. v. Smith*, 109 Ill. App. 3d 1121, 1123-24, 441 N.E.2d 949, 950-51 (1982) (on a motion for a summary judgment in an insurer's declaratory judgment action, the court determined coverage based in part upon deposition testimony and a guilty plea, both of which were in addition to the complaint in the underlying lawsuit).

It is clear to this court that if an insurance company has a right to present evidence beyond the complaint in the underlying lawsuit to show that it has *no* duty to defend, the insured has the same right to present evidence to show that there *is* a duty to defend. Where coverage depends upon whether an insured was acting in self-defense, it is crucial for the court to consider all the evidence presented before entering a declaratory judgment, since it is unlikely that the plaintiff in the underlying lawsuit will plead facts to show that the insured acted in self-defense. Typically, self-defense is raised as an affirmative defense. 735 ILCS 5/2—613 (West 2006). In the underlying case presented here, as a part of his counterclaim against Johnson, Wilson alleged facts tending to show that he acted in self-defense. See 735 ILCS 5/2—608 (West 2006).

Regardless of the manner in which the self-defense facts were raised, the trial court should have considered those facts. The facts alleged in the complaint and in Wilson's counterclaim in the underlying lawsuit show that a genuine issue of material fact exists regarding whether Wilson acted in self-defense. Moreover, Pekin afforded itself the right and discretion to investigate any occurrence and to settle any claim or suit that resulted. Pekin cannot now choose to ignore pleadings and evidence that indicate a duty to defend under the self-defense exception any more than it would want to be prevented from investigating pleadings and evidence that would indicate a lack of that duty. Accordingly, Pekin has a duty to defend Wilson. We also note that our decision finding that Pekin has a duty to defend Wilson does not resolve any factual issue in the underlying lawsuit. Our ruling is confined to the issue of the duty to defend and has no bearing on the ultimate resolution of the underlying lawsuit.

Pekin also argues that it does not have a duty to defend because there is "no evidence that the underlying action arose out of the premises designated" in its policy. Pekin contends that there are no facts in the underlying lawsuit to show that either incident arose out of the "ownership, maintenance, or use" of the covered premises, as required by its policy. We disagree. Although Johnson did not provide an address for D&J Tarp Service in his pleadings, it is unclear from the underlying lawsuit whether D&J Tarp Service is the location covered under Pekin's policy.

The policy lists the covered premises as "RR3 S35 T2S R2E, MOUNT VERNON, JEFFERSON CO, IL." In both its amended complaint for a declaratory judgment and its motion for a judgment on the pleadings, Pekin acknowledged that the location covered by its policy was Rural Route 3, Mt. Vernon, Illinois. In his answer to the amended complaint for a declaratory judgment, Wilson affirmatively stated that the premises where the alleged incident occurred was Wilson's business, located at Rural Route 3, Mt. Vernon, Illinois. Additionally, in his response to Pekin's motion for a judgment on the pleadings, Wilson argued that D&J Tarp Service, the location of one of the incidents alleged in the underlying lawsuit, was "the very premises involved." From the policy, the pleadings, and the arguments of the parties, there exists a genuine issue of whether the premises involved in the underlying lawsuit are located at Rural Route 3, Mt. Vernon, Illinois, which is the location covered by Pekin's policy. Pekin cannot refuse to defend Wilson on the basis that it does not cover the premises involved.

In a related argument, Pekin argues that there is no evidence to suggest that D&J Tarp Service is Wilson's business or that the incident alleged to have occurred there arose out of the ownership, maintenance, or use of that business. Pekin urges us to find that it has no duty to defend due to two additional limitations on its coverage. First, the policy lists the type of business covered as a "warehouse." Second, the policy defines who is an insured as Wilson and his spouse, "but only with respect to the conduct of a business of which [the insureds] are the sole owner." Pekin argues that the record indicates that the underlying action did not arise out of the conduct of a business owned by Wilson. Again, we disagree.

The record includes an allegation in Johnson's complaint that the incident occurred while he was assisting Debi Wilson "at her place of business." Although Johnson does not allege that Debi Wilson is the spouse of Jack O. Wilson, the insured, there is at least a question of fact regarding whether she is his spouse. Additionally, Wilson alleged in his counterclaim to the complaint for a declaratory judgment that

D&J Tarp Service was his business and that the incident alleged in the underlying lawsuit had occurred during the normal operating hours of that business. Therefore, there is evidence in the record to affirmatively show that D&J Tarp Service is the same business location and operation covered by Pekin's policy and that the incident alleged to have occurred there could have arisen out of the ownership, maintenance, or use of that business.

"It is a well-settled principle of insurance law that the duty to defend is broader than the duty to indemnify." *West Bend Mutual Insurance Co. v. Sundance Homes, Inc.*, 238 Ill. App. 3d 335, 337, 606 N.E.2d 326, 327 (1992). When there is any doubt about that duty, the doubt must be resolved in favor of the insured, and the insurer should only refuse to defend when the record is clear that the claim is beyond policy coverage. *Sundance Homes, Inc.*, 238 Ill. App. 3d at 338, 606 N.E.2d at 328. Here, Pekin relies upon the intentional-act exclusion to support its claim that it owes Wilson no duty to defend him. However, provisions that limit or exclude coverage are to be construed strongly against the insurer and liberally in favor of the insured. *National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Glenview Park District*, 158 Ill. 2d 116, 122, 632 N.E.2d 1039, 1042 (1994). Given that rule of construction, we find that there are facts in the underlying lawsuit that require Pekin to defend Wilson even if there is little chance that it will be required to indemnify him. If the fact finder in the underlying lawsuit determines that Wilson was acting in self-defense, there will be no monetary damages assessed against him. On the other hand, if the fact finder determines that Wilson was the aggressor, then there will be no duty to indemnify. Clearly, Pekin drafted this insurance policy so that its duty to defend is broader than and entirely separate from its duty to indemnify.

From the record in the case at bar, we discern several factual issues: whether Wilson was using reasonable force to protect himself, whether he owns D&J Tarp Service, whether that business is a warehouse, and whether the incident at that location arose out of Wilson's ownership, maintenance, or use of that business. Pekin has failed to show that its policy does not cover the underlying lawsuit, and accordingly, the trial court erred by granting Pekin's motion for a judgment on the pleadings. We hold that Pekin's duty to defend Wilson extends to all the counts of the amended complaint in the underlying lawsuit.

Finally, we affirm the trial court's dismissal of Wilson's counterclaim against Farmers. The Farmers policy excludes coverage for intentional conduct and does not provide any exception for self-defense, and there are no facts to show any potential for coverage

under that policy. Therefore, Farmers has no duty to defend Wilson. Since there is no potential for coverage under that policy, the counterclaim is without merit.

## CONCLUSION

For all the reasons stated, we affirm the trial court's grant of a judgment on the pleadings to Farmers. We affirm the dismissal of Wilson's counterclaim against Farmers. We reverse the grant of the judgment on the pleadings in favor of Pekin. We reverse the dismissal of Wilson's counterclaim against Pekin. Finally, we remand for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

WELCH and DONOVAN, JJ., concur.