# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461

---

| | |
|---|---|
| Appellate Court Caption | FARMERS AUTOMOBILE INSURANCE ASSOCIATION, Plaintiff-Appellant, v. MICHAEL C. DANNER and TRACY WATSON, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0461 |
| Rule 23 Order filed | February 23, 2012 |
| Rule 23 Order withdrawn | April 10, 2012 |
| Opinion filed | February 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a declaratory judgment action arising from an incident in which defendant's neighbor entered defendant's property to retrieve a baseball accidently hit onto defendant's property and defendants injured the neighbor during an altercation, the trial court erred in entering summary judgment for defendants based on the conclusion that their insurer had a duty to defend them in the neighbor's underlying suit, since the acts alleged in the suit could not reasonably be considered accidental, they were not "occurrences" for purposes of the homeowners' policies issued to defendants, defendants' acts could only be described as intentional when considering the complaint as a whole, and the trial court erred in finding the second defendant's affirmative defense of self-defense triggered the insurer's duty to defend, because the policies did not contain self-defense exceptions to the intentional-acts exclusion. |

| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 07-MR-178; the Hon. Derek J. Girton, Judge, presiding. |
| --- | --- |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Robert Marc Chemers (argued), Darryl L. Awick, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellant. |
| | William L. Townsley (argued), of Kesler, Garman, Brougher & Townsley, P.C., of Danville, for appellees. |
| Panel | PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion. |
| | Justice Knecht concurred in the judgment and opinion. |
| | Justice Pope concurred in part and dissented in part, with opinion. |

## OPINION

¶ 1     In December 2007, plaintiff, Farmers Automobile Insurance Association (Farmers), filed a complaint for declaratory judgment maintaining it had no duty to defend defendants, Michael C. Danner and Tracy Watson, in the underlying lawsuit filed by defendant, David D. Winkler, because neither Danner's nor Watson's insurance policy provided coverage for the intentional acts alleged in Winkler's complaint. Thereafter, the parties filed cross-motions for summary judgment.

¶ 2     Following a May 2011 hearing, the Vermilion County circuit court denied Farmers' motion and granted Danner and Watson's motion, finding Farmers had a duty to defend Danner and Watson in the underlying lawsuit.

¶ 3     Farmers appeals, arguing the trial court erred in entering judgment for Danner and Watson where (1) the acts alleged in the underlying complaint were intentional and not negligent in nature, and (2) Watson's affirmative defense of self-defense was insufficient to trigger Farmers' obligation to defend her because the policy did not include a self-defense exception. We reverse and remand with directions.

¶ 4          I. BACKGROUND

¶ 5          In September 2007, Winkler filed a complaint in the underlying lawsuit (Vermilion County case No. 07-L-90) alleging two counts of battery. Specifically, Winkler alleged Danner and Watson committed a battery against Winkler after Winkler entered Danner's property to retrieve a baseball accidently hit onto Danner's property by Winkler's son.

¶ 6          Count I alleged when Winkler entered Danner's property, Danner got into his pickup truck, drove it at a high rate of speed, steered his truck off the lane, and struck Winkler. Winkler alleged "Danner intended that his actions harm Winkler." Count I further alleged Danner then exited the vehicle and struck Winkler three times with a golf club, breaking three of Winkler's ribs. Winkler attempted to subdue Danner by wrestling him to the ground.

¶ 7          Count II alleged while Winkler was struggling to subdue Danner, Watson came to the scene and kicked Winkler in the back and the ribs, causing one of Winkler's ribs to puncture his lung. Watson also allegedly struck Winkler about his body with her hands. Winkler alleged "Watson intended that her actions harm Winkler." Winkler sought compensatory damages in excess of $50,000.

¶ 8          Danner sought coverage from the lawsuit under the homeowners policy issued to him by Farmers. Similarly, Watson sought coverage under the homeowners policy issued by Farmers to her parents. However, Farmers refused to accept either Danner's or Watson's tender of defense, maintaining the two policies did not cover the intentional act of battery.

¶ 9          In December 2007, Farmers filed a complaint for declaratory judgment maintaining Farmers had no duty to defend because neither Danner's nor Watson's policy provided coverage for the intentional acts alleged in Winkler's complaint.

¶ 10         In June 2008, Farmers filed a motion for judgment on the pleadings, arguing it had no duty to defend Danner or Watson in the underlying lawsuit because (1) their actions were not accidental in nature and did not amount to an "occurrence" under the policies of insurance and (2) coverage for the actions as alleged in Winkler's complaint was barred by exclusions contained in the policies. Watson and Danner did not file a written response to the motion for judgment on the pleadings.

¶ 11         During the October 21, 2008, hearing on Farmers' motion for judgment on the pleadings, Danner and Watson asserted they had raised counterclaims and affirmative defenses involving self-defense. Danner and Watson argued the exclusion for intentional acts did not apply when reasonable force was used by the insured to protect persons and property. (There was some confusion over whether the policies contained an exception from exclusion for acts in self-defense.) Danner and Watson also asked the trial court to reserve ruling on the recently added negligence counts contained in the amended complaint in the underlying lawsuit. (Just prior to the hearing on Farmers' motion for judgment on the pleadings, Winkler amended his complaint in the underlying action and alleged two additional negligence counts. From the transcript of the hearing, it appears the amended complaint had not yet made it into the court file.)

¶ 12         Count III of Winkler's complaint alleged that, when Winkler entered Danner's property, Danner got into his pickup truck, and "in a fit of great rage" drove it at a high rate of speed. It further alleged "Danner's truck veered off the lane." Danner "failed to regain control of his

-3-

truck" and struck Winkler. Winkler alleged "Danner owed a duty to Winkler and others present to exercise ordinary care in the operation of his truck" and as a "direct and proximate result of Danner's negligence" Winkler was injured by "Danner's failure to exercise ordinary care in the operation of his truck."

¶ 13        Count IV alleged Watson "attempted to stop the altercation, and indiscriminately hit and kicked at Winkler and Danner, striking Winkler." Winkler alleged Watson "acted negligently" when she kicked Winkler in the torso, puncturing his lung. Winkler further alleged his injuries were "a direct and proximate result of Watson's negligence."

¶ 14        Farmers admitted receipt of Winkler's amended complaint the previous day but asked the trial court to consider only the pleadings that were a matter of record as of the date of the hearing. The court did not consider the new amendments to the complaint in the underlying lawsuit.

¶ 15        At the conclusion of the hearing, the trial court, addressing only counts I and II, found the complaint alleged intentional acts, which were not covered. However, it denied Farmers' motion for judgment on the pleadings because it found the language of the policy required Farmers to "provide a defense *** even if it's determined the suit is groundless, false, or fraudulent."

¶ 16        In September 2009, this court reversed the trial court's judgment, finding the court "erred by reading the duty-to-defend language to impose a duty to defend any groundless, false, or fraudulent suit regardless of whether the bodily injury was caused by an 'occurrence to which this coverage applies.' " *Farmers Automobile Insurance Ass'n v. Danner*, 394 Ill. App. 3d 403, 411, 924 N.E.2d 1053, 1060 (2009). We remanded the cause to the trial court to reconsider in light of the current state of the pleadings in the underlying lawsuit.

¶ 17        In December 2009, Farmers filed an amended complaint for declaratory judgment, again arguing Danner and Watson were not entitled to coverage for the claims asserted against them in the underlying lawsuit.

¶ 18        In January 2010, Winkler stipulated he would be bound by the judgment in this case and was dismissed as a party in this case.

¶ 19        In October 2010, Danner and Watson filed a motion for summary judgment, arguing in addition to the underlying complaint the trial court may also consider the other pleadings in the case in determining whether the insurer has a duty to defend. Danner and Watson maintained the court should therefore also consider the allegations contained in their affirmative defenses and counterclaims, which alleged Winkler committed a battery by initiating an attack against them. Danner and Watson also contended whether their acts were intentional, negligent, or in self-defense were questions for the ultimate trier of fact to determine and could not be determined in a declaratory judgment action.

¶ 20        In November 2010, Farmers filed a cross-motion for summary judgment, arguing the amended complaint alleged intentional acts of assault and battery, which are excluded from the coverage under the terms of the policy, and Winkler's characterization of the acts as negligent was just an attempt to trigger Farmers' duty to defend.

¶ 21        In January 2011, Danner and Watson filed their response to Farmers' cross-motion for summary judgment, arguing Farmers erroneously maintained the trial court may only

consider the underlying complaint and the insurance policy. They argued instead under the supreme court's ruling in *Pekin Insurance Co. v. Wilson* (*Wilson II*), 237 Ill. 2d 446, 930 N.E.2d 1011 (2010), the trial court may consider not just the complaint but also other pleadings in determining whether the insurer has a duty to defend.

¶ 22 In May 2011, the trial court granted Danner and Watson's motion for summary judgment and denied Farmers' motion for summary judgment. The court found the allegations in count III against Danner were sufficient to state a claim for negligence such that Farmers was obligated to defend him. Specifically, the court found the following:

"The question is do we have an occurrence. An occurrence is, uh, defined as an accident. I think we all agree that negligence would constitute an occurrence.

Uh, so first is *** the issue of whether or not the two, the two claims, uh, Counts III and IV of negligence amount to that. I don't think that I can look at the fact that *** the complaint alleged only intentional torts. I think that, uh, if they legally state a, a cause of action for negligence, uh, and they are not analogists [*sic*] to a situation of an arson, a sexual assault, or a stabbing, *** where the victim was stabbed fifteen (15) times, uh, that there is a duty to defend.

Uh, I don't think–I don't feel that the, uh, allegation that Danner, uh, proceeded at a great speed, uh, drivers quite often–that's part of the act of negligence is they're driving too fast for the conditions [and] lose control of the, the vehicle.

Uh, based on just the pleading in regards to Danner, it may not be the most artfully drafted *** count of negligence, but I think it does state a, a negligence claim. So as to Danner, uh, I believe on, uh, Count III, uh, he does state a negligence claim. Uh, it does meet the requirements of an occurrence, and there is a duty to defend."

¶ 23 With regard to count IV, the trial court initially found Winkler failed to successfully draft a negligence claim. Specifically, the court found the following:

"Watson arrived, attempted to stop the altercation, and indiscriminately hit and kicked at Winkler. Uh, that's describing a battery. That's not describing a negligence situation.

So as to the Count IV, I don't think that does arise to a negligence, uh, action, uh, it doesn't meet an occurrence."

However, the trial court also stated the following:

"Now, that leaves, uh, [Danner and Watson's] argument *** of whether or not it's self-defense under the affirmative defense.

Uh, I can't remember where I read in which one of your motions, [Farmers,] but there was, uh, discussion that I, I'm limited to looking at the complaint. *** I think I can look at the affirmative defense. To say otherwise means that the Plaintiff determines whether or not the Defendant has insurance coverage by how he chooses to, to allege the *** action took place.

Uh, the Defendant may very well have facts known to them that would suggest that there is coverage. I think that it is proper to look at the, uh, affirmative defense.

*** Watson's, uh, description of her actions in the affirmative, uh, defenses, uh, when looking at *State Farm* [*Fire & Casualty Co.*] *v. Leverton*, [289 Ill. App. 3d 855,]

-5-

683 N.E.2d 476 [(1997)], which was, uh, an opinion issued on June 26th, 1997, as the Court said there, and I've already said, uh, several decisions have recognized that a complaint may state a claim of negligence where the unreasonable use of force and self-defense is alleged.

*** [W]ithout having the underlying case heard it would be impossible to make the determination, uh, on the pleadings as to whether or not, uh, this is in fact a good negligence claim if–I, I think her–she is–even what she's describing in her negligence portion–Watson arrived, attempted to stop the altercation. Uh, that could be an unreasonable use of force in an attempt of self-defense or defense of others, and based on that, again, I think that as to, to Watson, Farmers owes a duty to defend."

¶ 24 In sum, the trial court found although the allegations in count IV against Watson were insufficient to describe a negligence claim, Watson's affirmative defense, contained in the pleadings, alleged she was acting in self-defense. The court determined Watson exercised an unreasonable use of force in a self-defense attempt, which is essentially a negligence claim. Accordingly, the court found the allegation in count IV was sufficient to trigger Farmers' obligation to defend her.

¶ 25 This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27 On appeal, Farmers argues the trial court erred in entering judgment in favor of Danner based on count III of the amended complaint. Specifically, Farmers contends the facts alleged in the amended complaint are inconsistent with allegations of negligence because count III bases liability on the same intentional misconduct that was the subject of the original complaint, *i.e.*, it was not an inherently accidental "occurrence" as required by the policy.

¶ 28 Farmers also argues the trial court erred in entering judgment in favor of Watson on count IV of the amended complaint by finding Watson's affirmative defense of self-defense was sufficient to trigger Farmers' obligation to defend her. Specifically, Farmers contends Watson's self-defense claims are irrelevant because the policies do not contain self-defense exceptions.

¶ 29                                 A. Standard of Review

¶ 30 "Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93, 923 N.E.2d 735, 742 (2010). When parties file cross-motions for summary judgment, they agree only a question of law is involved, and the court should decide the issue based on the record. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309, 948 N.E.2d 1, 18 (2010). We review *de novo* a grant of summary judgment. *Millennium Park*, 241 Ill. 2d at 309, 948 N.E.2d at 18; see also *Joe Cotton Ford, Inc. v. Illinois Emcasco Insurance Co.*, 389 Ill. App. 3d 718, 720, 906 N.E.2d 1279, 1281 (2009) (finding review of a grant of summary

judgment in an action for declaratory judgment is *de novo*).

¶ 31                              B. Insurer's Duty To Defend

¶ 32        Illinois Courts have established the following analysis to determine this issue:

" 'To determine an insurer's duty to defend its insured, a court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent.' [Citation.] 'The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy.' [Citation.] '[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy. The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.' [Citation.]" (Internal quotation marks omitted.) *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1022, 886 N.E.2d 1166, 1171 (2008).

¶ 33        Section II of Danner's and Watson's respective insurance policies provide the following regarding liability coverages:

"Coverage E – Personal Liability

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability." (Emphases in original.)

Under the "definitions" section, the policies define the term "occurrence" as follows:

" '**occurrence**' means an accident, including exposure to conditions, which results, during the policy period, in:

a. **bodily injury**[.]" (Emphases in original.)

The policies define the term "bodily injury" as follows:

" '**bodily injury**' means bodily harm, sickness or disease, including required care, loss of services and death that results." (Emphasis in original.)

The two policies contain the following exclusionary provision:

"1. **Coverage E – Personal Liability and Coverage F – Medical Payments to**

**Others** do not apply to **bodily injury or property damage**:

a. which is expected or intended by the **insured**[.]" (Emphases in original.)

¶ 34 Thus, both policies provide coverage for any "occurrence" that results in bodily injury but exclude coverage where that bodily injury is "expected or intended by the insured." An "occurrence" is defined by the policy as an "accident." In Illinois, the term "accident" is defined as an unforeseen occurrence, usually of an untoward or disastrous character, with a result that is unintended and unexpected. *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 520, 823 N.E.2d 986, 990-91 (2004). The natural and ordinary consequences of an act do not constitute an accident. *Dial*, 355 Ill. App. 3d at 520, 823 N.E.2d at 991. Expected injuries are those that should have been reasonably anticipated by the insured. *Dial*, 355 Ill. App. 3d at 521, 823 N.E.2d at 991. Injuries are considered "expected" and excluded from coverage where the insured was consciously aware the injuries were practically certain to be caused by the conduct. *Dial*, 355 Ill. App. 3d at 521, 823 N.E.2d at 991.

¶ 35 **1. *Count III as to Danner***

¶ 36 Farmers argues that, while counts III and IV of the amended complaint are titled "negligence" and employ terminology associated with negligence, the counts predicate liability on the same intentional conduct alleged in counts I and II and not on an inherently accidental "occurrence" as required by the polices. In addition, Farmers maintains the amended counts do not fall outside of the policies' exclusions for allegations of bodily injury "expected or intended by the insured." The trial court agreed with Farmers as to count IV, which applied to Watson, but not count III, which applied to Danner.

¶ 37 First, in determining whether an insurance company has a duty to defend, courts are *not* required " 'to consider each count in isolation and ignore facts pleaded in other counts,' " where the plaintiff has pleaded separate counts against various defendants but not pleaded in the alternative. *SCR Medical Transportation Services, Inc. v. Browne*, 335 Ill. App. 3d 585, 590, 781 N.E.2d 564, 569 (2002) (quoting *Illinois Casualty Co. v. Turpen*, 84 Ill. App. 3d 288, 293, 405 N.E.2d 4, 7 (1980)). In *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 136-37, 761 N.E.2d 1214, 1222 (2001), the First District considered all of the facts alleged in two separate complaints in a single analysis of the insurer's duty to defend and "perform[ed] a textual exegesis on the complaints to determine whether their factual allegations trigger[ed] the insurance companies' duty to defend." In this case, Winkler pleaded multiple counts alleging separate claims against two defendants. Therefore, we may consider count III in light of the complaint as a whole.

¶ 38 Second, in analyzing the duty to defend, courts have considered the circumstances surrounding the pleading of the alleged negligence counts. See *SCR*, 335 Ill. App. 3d at 589, 781 N.E.2d at 568-69; *Allstate Insurance Co. v. Carioto*, 194 Ill. App. 3d 767, 774-75, 551 N.E.2d 382, 386 (1990). In *SCR*, 335 Ill. App. 3d at 589, 781 N.E.2d at 568, the reviewing court noted "[c]ount IX was rushed into the breach when it became obvious the first eight counts of [the plaintiff's] complaint would not support a duty to defend." In *Carioto*, 194 Ill. App. 3d at 775, 551 N.E.2d at 386, the reviewing court pointed out the negligence allegations were first raised in the third-amended complaint, which was filed 2 1/2 years after the

-8-

original complaint that alleged the assault was committed willfully and maliciously.

¶ 39    Last, courts give "little weight to the legal label that characterizes the underlying allegations." *Lexmark*, 327 Ill. App. 3d at 135, 761 N.E.2d at 1221. The *SCR* court found count IX was a "device without substance" where the count carved out the perpetrator's conduct during the car ride before the sexual assaults and "dress[ed] it up with 'negligent' labels." *SCR*, 335 Ill. App. 3d at 589, 781 N.E.2d at 568-69; see also *Dial*, 355 Ill. App. 3d at 522, 823 N.E.2d at 992 (another sexual-assault case, in which the reviewing court found that, despite the complaint being couched in terms of negligence, the alleged course of conduct was clearly intentional and thus the negligence allegations were "a transparent attempt to trigger insurance coverage"). Moreover, the *Carioto* court found the allegations that the defendant's actions were "merely 'careless and negligent' in 'falling on' or 'failing to avoid' or 'negligently striking' " the plaintiff were "facetious" since the defendant (1) announced his intent to stab the victim; (2) brandished a knife to effect the robbery; (3) after receiving money from the victim, joined his accomplice in the struggle; and (4) stabbed the victim 17 times. *Carioto*, 194 Ill. App. 3d at 775, 551 N.E.2d at 386. Additionally, in *American Family Mutual Insurance Co. v. Guzik*, 406 Ill. App. 3d 245, 248, 941 N.E.2d 936, 940 (2010), where the insured set fire to his house, the Third District found the argument "[the insured] acted negligently in failing to prevent the fire from spreading to the neighboring properties was a transparent attempt to trigger insurance coverage."

¶ 40    Here, while count III was labeled a negligence count, it alleged Danner drove the truck "*toward Winkler*" at "great speed" in a "fit of rage" and struck Winkler, "causing serious injuries." (Emphasis added.) Considering Danner's next act (as alleged in count I but omitted from count III) was to leave the vehicle and begin beating Winkler with a golf club until the club broke, it is difficult to see how striking him with the vehicle was merely unintended and unexpected and therefore accidental. See *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 377, 710 N.E.2d 1228, 1233 (1999) (while the victim phrased his complaint in terms of negligence, it strained credulity to suggest the insured's acts were merely negligent). Moreover, Winkler did not file count III until after Farmers had filed its declaratory-judgment action and filed a motion for judgment on the pleadings, asserting no coverage because Winkler's complaint alleged Danner's and Watson's actions were intentional. Although Danner's conduct is different from that of the alleged wrongdoers cited in the preceding paragraph, his conduct nonetheless can only be described as intentional when considering the complaint as a whole. Winkler's count III is another "transparent attempt to trigger insurance coverage." *Dial*, 355 Ill. App. 3d at 522, 823 N.E.2d at 992. Because the acts alleged in count III cannot reasonably be considered accidental, they are not "occurrences" for purposes of coverage under the policies. Thus, the trial court erred in finding Farmers had a duty to defend Danner based on Winkler's negligence allegations in count III .

¶ 41                                    2. *Count IV as to Watson*

¶ 42    Farmers argues the trial court erred in finding Watson's affirmative defense of self-defense was sufficient to trigger Farmers' obligation to defend. Specifically, Farmers

contends the self-defense claims are irrelevant because the policies do not contain self-defense exceptions.

¶ 43    While the trial court found count IV did not allege negligence on its face, Danner and Watson argue the court correctly looked beyond the complaint to the affirmative defenses and counterclaims in determining Watson exercised an unreasonable use of force in defending herself, which constitutes negligence.

¶ 44    As stated, to determine an insurer's duty to defend its insured, a trial court must look to the allegations of the underlying complaint. *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336, 340, 935 N.E.2d 1058, 1061 (2010). Generally, to determine whether an insurer has a duty to defend its insured, a court should apply an "eight corners rule," *i.e.*, comparing the four corners of the underlying complaint with the four corners of the insurance policy to determine whether the alleged facts potentially fall within the policy's coverage. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393, 620 N.E.2d 1073, 1079 (1993) (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08, 607 N.E.2d 1204, 1212 (1992)). An insurer's duty to defend arises if the "facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage." *Outboard Marine Corp.*, 154 Ill. 2d at 108, 607 N.E.2d at 1212. "[A] complaint may state a claim of negligence where the unreasonable use of force in self-defense is alleged." *Leverton*, 289 Ill. App. 3d at 857, 683 N.E.2d at 479.

¶ 45    However, a trial court is not limited to the allegations in the complaint in determining whether an insurer has a duty to defend. *Holabird & Root*, 382 Ill. App. 3d at 1031, 886 N.E.2d at 1178. In certain circumstances, a trial court may look beyond the allegations of the complaint in the underlying lawsuit in order to determine an insurance company's duty to defend its insured so long as the " 'court does not determine an issue critical to the underlying action.' " *Wilson II*, 237 Ill. 2d at 460-61, 930 N.E.2d at 1019-20 (quoting *Holabird & Root*, 382 Ill. App. 3d at 1031, 886 N.E.2d at 1178).

¶ 46    Such a circumstance exists in a situation where a policy includes a self-defense exception to a policy exclusion for intentional acts. See *Pekin Insurance Co. v. Wilson* (*Wilson I*), 391 Ill. App. 3d 505, 511, 909 N.E.2d 379, 386 (2009). In such a case, it would be unreasonable for the trial court to look only to the complaint because the plaintiff in the underlying lawsuit is unlikely to plead facts tending to show he initiated a battery requiring the insured to exercise self-defense. See *Wilson II*, 237 Ill. 2d at 465-66, 930 N.E.2d at 1022-23.

¶ 47    However, in this case, it is undisputed the policies do not contain self-defense exceptions to the intentional-acts exclusions. Nonetheless, relying on this court's decision in *Leverton*, the trial court found because the counterclaims argued Winkler committed battery and Watson argued the affirmative defense of self-defense, the possibility existed Watson negligently exceeded the permissible scope of self-defense by "indiscriminately" kicking at Winkler.

¶ 48    Danner and Watson's counterclaim for trespass and battery alleged (1) as a result of a lawsuit in 2000, Winkler was permanently enjoined from entering onto Danner's land; (2) Winkler's complaint admits Winkler entered Danner's property, (3) when asked to leave the property, Winkler began a physical confrontation; (4) "Watson attempted to intervene in the

-10-

confrontation, but Winkler turned on her also[ ]"; and (5) during the attack by Winkler, "Danner and Watson suffered physical injury."

¶ 49    Watson's affirmative defense alleged (1) immediately prior to the time Danner and Watson allegedly committed the acts described in Winkler's complaint, Winkler "without any just cause violently and viciously attacked" them; (2) Danner and Watson "then necessarily defended themselves from any further attack" by Winkler; and (3) in defending themselves Danner and Watson "used only that degree of force that reasonably appeared to be necessary to protect themselves."

¶ 50    In *Wilson I*, 391 Ill. App. 3d at 511, 909 N.E.2d at 386, the Fifth District case underlying the supreme court's decision in *Wilson II*, 237 Ill. 2d at 460-61, 930 N.E.2d at 1019-20 (finding the trial court may consider other pleadings as well as the complaint in determining a duty to defend), the appellate court found the following:

> "In the negligence count, [the plaintiff in the underlying lawsuit] realleged the factual accounts of the incidents *** and added allegations that were presumably designed to state a cause of action in negligence against [the insured]: that [the insured] had breached his duty of ordinary care by failing to adequately use or maintain the tools of his employment. However, we cannot reasonably construe the facts alleged as indicating that [the insured] was negligent. The facts alleged are inconsistent with allegations of negligence. *** Each count allege[d] intentional conduct that [the insured] should have expected or intended, thus bringing all the allegations under the intentional-act exclusion. Were it not for the policy's self-defense exception, that would end our inquiry."

The court then went on to consider whether the insured's counterclaim, which raised the issue of self-defense, indicated the insured was merely defending himself during the altercation. *Wilson I*, 391 Ill. App. 3d at 513, 909 N.E.2d at 387-88. The court found that, because the underlying lawsuit remained "pending and undetermined," the potential existed the fact finder could resolve the case by finding the insured was acting in self-defense. *Wilson I*, 391 Ill. App. 3d at 513, 909 N.E.2d at 387.

¶ 51    However, in this case, it is undisputed Watson's policy does not contain a self-defense exception to its intentional-acts exclusion. Thus, a determination of whether Watson's actions amounted to self-defense is unnecessary. Further, the question of whether the fact finder will ultimately resolve the underlying lawsuit by finding Watson acted in self-defense is irrelevant for purposes of Farmers' duty to defend. Regardless of whether the trier of fact in the underlying lawsuit were to find Watson acted in self-defense, Farmers would be under no duty to pay on behalf of Watson under the language of the policy because the conduct set forth in the pleading was intentional and there is no self-defense exception to the exclusion for intentional acts. We note neither Danner nor Watson argues a self-defense exception should be read into the policies as a matter of public policy. Accordingly, Farmers does not have a duty to defend Watson in the underlying lawsuit because Watson's policy does not contain a self-defense exception for intentional acts.

¶ 52                                III. CONCLUSION

¶ 53    For the reasons stated, we reverse the Vermilion County circuit court's judgment and

-11-

remand the cause for the court to enter an order granting Farmers' summary-judgment motion and denying Danner and Watson's.

¶ 54    Reversed and remanded with directions.

¶ 55    JUSTICE POPE, specially concurring in part and dissenting in part:

¶ 56    I specially concur in part and respectfully dissent in part. Although I agree with the majority Farmers does not have a duty to defend Watson under count IV because Watson's policy does not contain a self-defense exception for intentional acts, I conclude count III sufficiently alleged a valid negligence claim for purposes of triggering Farmers' duty to defend Danner.

¶ 57    While the majority finds count III to be merely a " 'transparent attempt to trigger insurance coverage' " (*supra* ¶ 40 (quoting *Dial*, 355 Ill. App. 3d at 522)), Illinois law traditionally supports a liberal policy of allowing amendments to pleadings to permit a party to fully present his or her cause of action. *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 417, 846 N.E.2d 153, 157-58 (2006). Plaintiffs should be "afforded every opportunity establish a case, and amendments to the pleadings are to be liberally allowed to enable the action to be heard on the merits, rather than brought to an end because of procedural technicalities." *Grove*, 364 Ill. App. 3d at 417, 846 N.E.2d at 158.

¶ 58    In this case, count III alleged Winkler entered Danner's property to retrieve a baseball accidently hit onto Danner's property by Winkler's son. According to the complaint, Danner had cursed at the children when they attempted to retrieve the ball. While Winkler was looking for the ball, Danner got into his pickup truck and drove it down his lane toward Winkler. "Danner in a fit of rage proceeded at great speed," and "Danner's truck veered off the lane, and he failed to regain control of his truck." The truck struck Winkler and knocked him into the fence and onto the ground, "causing serious injuries that required medical treatment and hospitalization." Count III also alleged Danner owed Winkler a duty to exercise ordinary care in the operation of his vehicle, and Danner's negligent failure to exercise such care caused Winkler's injuries.

¶ 59    In sum, count III alleged (1) Danner had a duty to Winkler (2) to exercise ordinary care in the operation of his vehicle; a duty which (3) Danner negligently breached by driving his vehicle at a high rate of speed, veering off the road, failing to regain control of his vehicle and striking Winkler, (4) causing him injuries. I would find count III sufficiently alleged a valid negligence claim for purposes of triggering Farmers' duty to defend. See *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98, 741 N.E.2d 253, 254 (2000) (the insurer is obligated to defend its insured where the complaint alleges facts that may be *potentially* within policy coverage); *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1007, 728 N.E.2d 680, 688-89 (2000) (the duty to defend does not require the complaint allege or use language affirmatively bringing the claims within the scope of the policy; instead "[t]he complaint against the insured should be liberally construed").

¶ 60    Whether Danner's acts were in fact intentional (as alleged in count I) or negligent (as

alleged in count III) is a matter for the trier of fact in the underlying lawsuit, not this court, to determine. See *Wilson I*, 391 Ill. App. 3d at 515, 909 N.E.2d at 389; *Holabird & Root*, 382 Ill. App. 3d at 1031, 886 N.E.2d at 1178. For the foregoing reasons, I respectfully dissent from the majority's decision and would find potential coverage under count III. I otherwise concur with the majority's decision as to count IV.