2024 IL App (1st) 230738-U

No. 1-23-0738

Order filed December 9, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ARCH INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
|     Plaintiff-Appellee and Counterdefendant, | ) | Cook County. |
| | ) | |
|     v. | ) | No. 2018 L 12681 |
| | ) | |
| PCH MANAGEMENT ALPHA, LLC; PEOPLE'S | ) | The Honorable |
| CHOICE HOSPITAL, LLC; and PCH LAB | ) | Caroline Kate Moreland, |
| SERVICES, LLC, | ) | Judge Presiding. |
| | ) | |
|     Defendants-Appellants and Counterplaintiffs, | ) | |
| | ) | |
| (Weimar Medical Holdings, LLC, and Francis L. Price, | ) | |
| Defendants). | ) | |

_____

JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly held that the insurer had no duty to defend or indemnify the insureds in the underlying litigation, that the insurer was not liable for damages for breach of contract, and that the insureds had no claim against the insurer for vexatious or unreasonable conduct under the Illinois Insurance Code. We affirm.

¶ 2    In this insurance coverage dispute, PCH Management Alpha, LLC, People's Choice Hospital, LLC, and PCH Lab Services, LLC (collectively, PCH) appeal the circuit court's finding that PCH's insurance claim to Arch Insurance Company (Arch) was not covered under the policy. As will be discussed below, PCH was sued by a third-party medical holdings company and its managing member wherein they alleged that PCH had engaged in a fraudulent billing scheme with the company. PCH subsequently demanded coverage from Arch for the underlying claim, but Arch denied coverage based on an interrelated wrongful acts exclusion within the policy. Specifically, Arch asserted the claim triggered that exclusion because it was interrelated with another claim brought by a hospital against PCH in a different lawsuit before the policy period had begun. The circuit court ultimately agreed and entered a final judgment in favor of Arch. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    Arch issued a "claims-made" liability insurance policy to PCH for the period of September 11, 2017, to September 11, 2018. The policy provided liability coverage for PCH's directors and officers. Coverage, however, only applied if a claim for wrongful acts was made during the policy period and did not fall under one of the policy's exclusions. Specifically, the policy contained the following relevant provisions:

> "**B.    Organization Reimbursement**
>
> The **Insurer** shall pay **Loss** on behalf of an **Insured Organization** that such **Insured Organization** has, to the extent permitted or required by law, indemnified the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons.**
>
> **C.    Organizational Liability**

> The **Insurer** shall pay **Loss** on behalf of an **Insured Organization** resulting from a **Claim** first made against such **Insured Organization** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by an **Insured Organization**."

The policy defined "**Wrongful Act**" as "any actual or alleged: **1.** act, error, omission, misstatement, misleading statement, neglect or breach of duty by **Insured Persons** in their capacity as such or in an **Outside Capacity** or, with respect to Insuring Agreement C, by an **Insured Organization**; or **2.** matter claimed against an **Insured Person** solely by reason of their serving in such capacity, including service in an **Outside Capacity.**"

¶ 5    Relevant here to determine whether a claim was first made during the policy period is section 10 of the General Provisions of the policy, as amended. That section governed "**Interrelated Claims"** and provided the following:

> "Regarding the **Liability Coverage Parts** only, all **Claims** arising from, based upon, or attributable to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the earliest date that:
>
> **A.**    any of such **Claims** was first made, even if such date is before the **Policy Period;**
>
> **B.**    proper notice of such **Wrongful Act** or **Interrelated Wrongful Act** was given to the **Insurer** pursuant to Section 9.B. above; or
>
> **C.**    notice of such **Wrongful Act** or **Interrelated Wrongful Act** was given under any other directors and officers liability, employment practices liability, fiduciary liability, management liability or similar insurance policy.

The policy defined "**Interrelated Wrongful Acts**" as "**Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes."

¶ 6    Finally, section 4 of the policy contained a prior and pending litigation exclusion, also known as the "PPL Exclusion," that provided, in relevant part:

"**4.    Exclusions**

"**A.**    The **Insurer** shall not pay **Loss** for any **Claim** against an **Insured:**

1.    arising from, based upon, or attributable to any fact, circumstance or situation that, before the inception date of this Policy, was the subject of any notice given under any other insurance policy;

2.    arising from, based upon, or attributable to any:

a.    demand, suit or proceeding made or initiated against any **Insured** on or prior to the applicable Pending and Prior Litigation Date in Item 6 of the Declarations; or

b.    **Wrongful Act** specified in such prior demand, suit or proceeding or any **Interrelated Wrongful Acts** thereof[.]"

That section, however, was later amended by Endorsement 5, which provided:

"**23.    Pending and Prior Litigation Exclusion**

Section 4.A.2. is deleted and replaced by:

a.    written demand, suit or proceeding made or initiated against any **Insured** within the scope of a Directors and Officers Liability, Employment Practices Liability, Fiduciary Liability, or similar management liability insurance policy (whether covered or not) on or prior to the applicable Pending and Prior Litigation Date in Item 6 of the Declarations.

b.    **Wrongful Act** specified in such prior demand, suit or proceeding or any **Interrelated Wrongful Acts** thereof[.]

¶ 7    In June 2017, before the policy period, Newman Memorial Hospital, Inc. (Newman) filed a declaratory judgment lawsuit against PCH Management, LLC, PCH Lab Services, LLC, and others (hereafter referred to as PCH), in the district court of Ellis County, Oklahoma. The Newman plaintiffs alleged, in relevant part, that Newman "was on the brink of closure and

unable to make payroll" when PCH "presented itself to Newman as [the] white knight who would save the hospital and set it on a court for success." Consequently, Newman entered into an agreement with PCH that gave PCH nearly total control of the hospital. Newman also entered into an agreement with PCH to increase the hospital's overall revenue with the addition of a laboratory reference program. The Newman plaintiffs alleged that the program was part of a fraudulent billing scheme by PCH.

¶ 8    The following year, PCH was involved in another lawsuit containing similar allegations as those in the Newman litigation. Specifically, Weimar Medical Holdings, LLC, and its managing member, Francis L. Price (hereafter referred to as Weimar), filed a counterclaim and third-party complaint against PCH Management Alpha, LLC, People's Choice Hospital, LLC, and PCH Lab Services, LLC (collectively referred to as PCH) in the circuit court of Cook County. The Weimar counterclaim and third-party complaint set forth claims of fraudulent inducement, fraud, breach of fiduciary duty, and breach of contract, among other things.

¶ 9    The Weimar counterclaim alleged, in relevant part, that PCH engaged in "a familiar pattern and practice that appears to be PCH's *modus operandi*" in which "there [is] a regional hospital in financial distress" and PCH "rid[es] into town like a white knight ostensibly ready and able to save [the hospital]." Like the Newman complaint, the Weimar counterclaim alleged that Weimar entered into a hospital management agreement with PCH that gave PCH unrestrained control of the company. Weimar noted other similar lawsuits that were pending against PCH, including the Newman suit: "[i]n each of the referenced complaints filed by the hospitals, as in this case, PCH was vested with virtually unfettered control and authority over all aspects of hospital operations and finance, which PCH proceeded to misuse and abuse in order to enrich itself at the expense of the hospitals, thereby plunging the hospitals into deeper debt and

distress." Weimar further alleged, "in each of the referenced cases, as in this case, the center-piece of PCH's scheme was a vigorous and aggressive development and/or expansion of the hospitals' 'laboratory services' operations, that PCH hyped as a tried-and-true blue print [*sic*] for financial turnaround, when in fact, it was an artifice for fraud, plagued by allegations of fraudulent billing, improper inducements and/or regulatory nightmares." PCH subsequently demanded that Arch provide coverage for the Weimar counterclaim.

¶ 10    In November 2018, Arch filed the instant eight-count declaratory judgment action in the Cook County circuit court, asserting, in the main, that it owed PCH no coverage for the Weimar litigation and had no duty to defend or indemnify PCH in connection with that suit. Specifically, Arch asserted the Weimar counterclaim arose from, was based upon, or attributable to the same wrongful act or interrelated wrongful acts as the Newman suit, which was initiated before the policy period. Arch thus argued there was no coverage for the Weimar litigation under PCH's insurance policy.

¶ 11    In response, PCH argued that the claims in the Newman suit and the Weimar suit were not interrelated because the parties were different, the contract at issue was different and the hospital where the events took place was different. Additionally, PCH filed a two-count counterclaim against Arch, seeking damages for breach of contract (count I) and bad faith under section 155 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 2018)) (count II) based on Arch's refusal to provide PCH with a defense in the Weimar suit. Arch subsequently answered PCH's counterclaim and also asserted affirmative defenses, namely, that Arch incorporated its complaint for declaratory judgment as its first affirmative defense and that PCH failed to mitigate damages, among other things. PCH, however, moved, successfully, to strike and dismiss Arch's affirmative defenses.

¶ 12    Arch eventually moved for judgment on the pleadings. On April 28, 2022, the circuit court entered an order wherein it conducted an extensive interrelated conduct analysis before ultimately concluding that "the claims brought in the Weimar Litigation constitute Interrelated Wrongful Acts that date prior to the issuance of the insurance Policy." The court then concluded that, because the claims in the Newman and Weimar suits constituted interrelated wrongful acts and the Newman suit was filed before PCH's policy period, the policy's PPL Exclusion also applied (see *supra* ¶ 6). Arch, therefore, owed PCH no coverage for the Weimar litigation.[1]

¶ 13    Although the lower court did not specifically address count I of PCH's counterclaim for breach of contract, the court denied count II of the counterclaim, which sought bad faith damages under section 155 of the Insurance Code. Specifically, the court concluded that, because Arch owed PCH no coverage for the Weimar suit, Arch could not be held liable for unreasonable and vexatious conduct.

¶ 14    PCH subsequently filed a motion to reconsider the court's April 28, 2022, judgment, asserting mainly that the lower court erroneously considered allegations outside Arch's declaratory judgment complaint and misapplied existing law in determining that the claims in the Weimar suit constituted interrelated wrongful acts with the claims in the Newman action. Before the court ruled on that motion, PCH moved for summary judgment on counts I and II of its counterclaim against Arch, and on counts I and IV of Arch's declaratory judgment complaint, which sought declarations that Arch owed no coverage to PCH based on the policy's interrelated wrongful acts and PPL exclusions.

---

[1]The court below also considered several other exclusions raised in Arch's motion for judgment on the pleadings, but ultimately denied the motion with respect to those coverage defenses. Because those exclusions are not at issue in this appeal, we need not address them.

Arch, meanwhile, filed a cross-motion for judgment on the pleadings as to count I of PCH's counterclaim for breach of contract (which the court did not definitively rule on in its April 28, 2022, order) and asked the court to address all outstanding matters and enter a final judgment in the case.

¶ 15    On March 23, 2023, the court denied PCH's motion to reconsider. The court also denied PCH's summary judgment motion, finding most of the arguments therein were duplicative "of those arguments made in briefing the motions for judgment on the pleadings and have already been addressed." Finally, the court granted Arch's motion for judgment on the pleadings as to count I of PCH's counterclaim for breach of contract, finding PCH was not entitled to judgment as a matter of law on that claim because Arch had no duty to defend or indemnify PCH in the Weimar litigation for the reasons set forth above. Because the court resolved all outstanding matters, it indicated that the order was final and appealable. PCH now appeals.

¶ 16                                        ANALYSIS

¶ 17    On appeal, PCH has abandoned its primary arguments below, namely, that the claims in the Newman and Weimar suits were not interrelated because the parties were different, the contract at issue was different and the hospital where the events took place was different. Instead, although it's not entirely clear, PCH seems to now argue the circuit court erred in granting Arch judgment on the pleadings because Arch never pleaded the interrelated wrongful acts and PPL exclusions as affirmative defenses to PCH's counterclaims for breach of contract and bad faith damages. Additionally, the court's ruling relied on material facts that were in dispute and ignored that PCH's conduct at issue in the Newman litigation was, in fact, lawful.

¶ 18    Judgment on the pleadings is appropriate where the pleadings disclose no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *Hooker v. Illinois*

*State Board of Elections*, 2016 IL 121077, ¶ 21. In deciding a motion for judgment on the pleadings, courts may consider "only those facts appearing on the face of the pleadings, matters subject to judicial notice, and any judicial admissions in the record." *Id*. Courts must also take all well-pleaded facts and reasonable inferences based on those facts as true. *Id*. In other words, "a motion for judgment on the pleadings is akin to a motion for summary judgment limited to the pleadings." (Internal quotation marks omitted.) *Intersport, Inc. v. National Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 318 (2008).

¶ 19     We review the lower court's grant of judgment on the pleadings pursuant to section 2-615(e) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2018)) *de novo*. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). Likewise, the construction of an insurance policy presents a question of law, which we also review *de novo*. *Id*.

¶ 20     Turning to PCH's arguments on appeal, we must first determine whether the lower court properly held that coverage for the Weimar suit was barred by the policy's interrelated wrongful acts exclusion. As set forth above, PCH's policy with Arch was a claims-made policy that provided the insureds with coverage for claims by third parties so long as such claims were both made and reported during the policy period. The policy provided, as relevant here, that Arch was not obligated to defend, indemnify or provide coverage for claims against insureds made before the policy period consisting of a "**Wrongful Act** specified in such prior demand, suit or proceeding or any **Interrelated Wrongful Acts** thereof[.]" The policy defined "**Interrelated Wrongful Acts**" as "**Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes."

¶ 21 Here, the claims in both the Newman and Weimar litigation alleged that PCH presented itself and/or acted as the "white knight" who would "save the hospital" from financial distress. The hospitals consequently entered into hospital management agreements with PCH whereby PCH was given unfettered control of the hospitals. As part of this process, PCH allegedly "also entered into a laboratory management agreement to increase the overall revenue of Newman [and Weimar] with the addition of a Laboratory Reference Program." According to the plaintiffs in the Newman and Weimar suits, PCH supplied the hospitals with false projections and representations to fraudulently induce them to sign the management agreements. These allegations by the Newman and Weimar plaintiffs clearly share a common nexus of facts, circumstances, and events involving PCH insofar as PCH supposedly engaged in the same fraudulent billing scheme with both hospitals for its own financial benefit. For that reason, we cannot say the circuit court erred in holding there was no coverage for the Weimar litigation as such coverage was barred by the policy's interrelated wrongful acts exclusion.

¶ 22 While the PCH entities were not entirely identical in both suits, as the circuit court noted, "all of the PCH Defendants and entities are owned by either Dr. Seth Goodman, or an entity entirely owned by Dr. Seth Goodman." Moreover, as the court below aptly observed, what matters here "is the commonality between the course of action decided by PCH Healthcare Holdings and implemented by its various wholly owned subsidiaries," not whether "some of the entities involved in this common scheme are different." And, regardless, we reiterate that PCH, on appeal, has abandoned its arguments below that the claims cannot be interrelated because they involved some different parties, different contracts and hospitals.

¶ 23 As we just demonstrated, the lower court properly held that the claims brought in the Weimar litigation constituted interrelated wrongful acts as the claims brought before the policy

period in the Newman litigation. We therefore agree with the court's subsequent holding that, because the claims were interrelated and the Newman suit was filed before PCH's policy period, the policy's PPL Exclusion applied to bar coverage. As set forth above, that exclusion specifically stated that the insurer was not required to pay loss for any third-party claims against the insureds that consisted of wrongful acts or interrelated wrongful acts first made before the policy period. Accordingly, the policy's PPL Exclusion also barred coverage for the claims in the Weimar litigation.

¶ 24    Having determined that the interrelated wrongful acts and PPL exclusions applied in this case, we now turn to PCH's arguments that Arch was nevertheless required to plead those exclusions as affirmative defenses to PCH's counterclaims for breach of contract and bad faith damages, that the lower court erroneously relied on disputed material facts in granting Arch judgment on the pleadings and ignored that PCH's conduct at issue in the Newman suit was, in fact, lawful. As will be discussed below, these arguments fail for several reasons.

¶ 25    First, it's undisputed that Arch pleaded the interrelated wrongful acts and PPL exclusions in its declaratory judgment complaint as grounds for refusing coverage to PCH under the policy. While PCH claims that was insufficient and Arch still had to plead the exclusions as affirmative defenses to establish there was no coverage, PCH has not developed any legal argument or cited any relevant authority demonstrating that Arch had to replead those coverage defenses to defeat PCH's counterclaims. Moreover, we agree with the lower court that because Arch was not required to provide coverage for the claims in the Weimar suit, it then follows that Arch did not breach its insurance contract with PCH or act in bad faith in refusing to provide coverage.

¶ 26    We also reject PCH's argument that the circuit court improperly granted Arch judgment on the pleadings because it relied on material facts that were in dispute. It is well settled that a

denial of an allegation in an answer or an affirmative defense will preclude judgment on the pleadings only when the denial raises issues of material fact. *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340, 347 (1999). Here, the parties did not dispute the underlying relative facts concerning the Newman and Weimar litigation that formed the basis of Arch's declaratory judgment action; rather, they disputed whether or not there was coverage based on those undisputed facts. Specifically, PCH's answer to Arch's motion for judgment on the pleadings denied that the claims in the Newman and Weimar litigation constituted interrelated wrongful acts, thereby triggering coverage for the Weimar suit. PCH's denial did not raise an issue of material fact, however, as it simply disputed whether there was coverage under the policy and relevant law. The circuit court's resolution of that legal issue therefore did not rely on disputed materials facts, as PCH has claimed.

¶ 27    Likewise, we reject PCH's challenge to the lower court's interrelated analysis on the basis that PCH's conduct at issue in the Newman litigation was lawful. We note that PCH goes to great lengths in its brief arguing that its conduct was lawful under various federal laws including, for example, social security law. We need not address any of that here as PCH's policy with Arch defined "**Wrongful Act**" as "any actual or *alleged*: 1. act, error, omission, misstatement, misleading statement, neglect or breach of duty by **Insured Persons** in their capacity as such or in an **Outside Capacity** or, with respect to Insuring Agreement C, by an **Insured Organization**[.]" (Emphasis added.) Under the plaint language of the policy, there only needed to be allegations of wrongful conduct to trigger the interrelated wrongful acts exclusion, and that is exactly what happened here.

¶ 28 Finally, PCH's contention that the PPL Exclusion is unenforceable because it contained modified language that removed the original exclusion's prefatory language (see *supra* ¶ 6) is also without merit.

¶ 29 Here, both the original PPL Exclusion and the modified provision, known as Endorsement No. 5, were attached to Arch's declaratory judgment complaint. As the court below noted, "Endorsement No. 5 still include[d] the header 'Exclusions' and state[d] an insurer 'shall not pay loss for any claim against an insured.' " Moreover, "[t]he only language missing from the Endorsement No. 5 is 'arising from, based on, or attributable to any [demand, suit or proceeding made or initiated against any **Insured** on or prior to the applicable Pending and Prior Litigation Date in Item 6 of the Declarations[.]" The court found that, when construing the policy as a whole, as we must, "the Endorsement did not conflict with the language of the original PPL Exclusion and the expressed language still portrayed the intent of the contracting parties." We agree. Indeed, courts will not interpret insurance policies in a manner that would nullify or render provisions meaningless. *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 38. Similarly, "[t]he parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." (Internal quotation marks omitted.) *Id.*

¶ 30 PCH attempts to avoid application of these well-settled contract rules by arguing that the allegations in Arch's declaratory judgment complaint relied on the language contained in the original PPL Exclusion, rather than the modified language. Yet, as the circuit court and PCH acknowledged, the modified policy provision was attached as an exhibit to Arch's declaratory judgment complaint and was thus properly considered by the court below in its final order. In any event, PCH has not offered another interpretation for the modified PPL Exclusion, but

instead has simply claimed it is unenforceable. We will not depart from established contract law by interpreting the parties' policy in this case in a manner that would render the PPL Exclusion meaningless and be contrary to the parties' intent when they signed the agreement.

¶ 31    Accordingly, and for the reasons set forth above, we conclude that the circuit court properly entered judgment in favor of Arch in this case.

¶ 32                                    III. CONCLUSION

¶ 33    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 34    Affirmed.